# LABOR AGREEMENT

BETWEEN

# GIANT FOOD, LLC.
# IN-STORE BAKERY OPERATION

AND

# B.C.T.G.M.I.U, AFL-CIO
# LOCAL 118, WASHINGTON, D.C.

AUGUST 10, 2008 - AUGUST 11, 2012

(Bake-Off Baker/Bake-Off Assistant)

## TABLE OF CONTENTS

ARTICLE I - RECOGNITION AND UNION SECURITY .................................................2

ARTICLE II - WORK WEEK AND OVERTIME.....................................................4

ARTICLE III - WAGES ..........................................................................5

ARTICLE IV - VACATIONS ....................................................................6

ARTICLE V - HOLIDAYS .......................................................................7

ARTICLE VI - NIGHT SHIFT DIFFERENTIAL ..............................................9

ARTICLE VII - SUNDAY WORK - SUNDAY PAY -
ASSIGNMENT & DEFINITION...................................................................9

ARTICLE VIII - INTERMISSION REST ........................................................9

ARTICLE IX - SENIORITY ...................................................................10

ARTICLE X - LUNCH PERIOD ...............................................................10

ARTICLE XI - REST PERIOD DURING WORKING HOURS ..........................11

ARTICLE XII - MANAGEMENT FUNCTION.............................................11

ARTICLE XIII - PENSION.......................................................................11

ARTICLE XIV - HEALTH BENEFITS FUND.............................................12

ARTICLE XV - LEAVE OF ABSENCE WITHOUT PAY ..............................14

ARTICLE XVI - SICK LEAVE.................................................................14

ARTICLE XVII - GRIEVANCE AND ARBITRATION PROCEDURE ............15

ARTICLE XVIII - STRIKE AND LOCKOUT................................................16

ARTICLE XIX - SEVERANCE PAY..........................................................17

ARTICLE XX - GENERAL PROVISIONS ..................................................18

ARTICLE XXI - DURATION OF AGREEMENT.........................................19

SCHEDULE "A" ..................................................................................20

# AGREEMENT

This Agreement made and entered into this 4th day of March 2009, which shall be in full force and effect from August 10, 2008, to and including August 11, 2012, by and between Giant Food LLC, Bake-Off Operations within Retail Stores, hereinafter referred to as the "Employer" and the Bakery, Confectionery, Tobacco Workers, and Grain Millers International Union, AFL-CIO, Bakers' Local No. 118, hereinafter referred to as the "Union", who jointly agree as follows:

Not to use any subterfuge, coercion or intimidation, directly or indirectly, to evade or frustrate the compliance with the spirit and the terms of this Agreement, nor cause the discharge or furlough of any member of the Union because of any Union activities.

# ARTICLE I - RECOGNITION AND UNION SECURITY

The Employer recognizes Bakers' Local Union No. 118 of the District of Columbia as the sole collective bargaining agent for each employee classified as a Bake-off Baker and Assistant covered by this Agreement.

## Section 1 – Jurisdiction

The Employer recognizes the Union as the sole collective bargaining representative of all the Bake-off Bakers and Assistants at any Retail In-Store Bakery or Bake-off which will be located in Fredericksburg, Virginia, or located in Virginia but geographically situated north of a straight line drawn from Colonial Beach in the east to Churchville in the west. The parties acknowledge that they have not hereby reached any agreement or established any boundaries concerning facilities north of Washington, D.C., that may hereafter be opened at locations not specified or described herein.

## Section 2 - Union Membership

(a) The parties agree that each employee, subject to the jurisdiction of Bakers' Local Union No. 118, shall become a member of the respective Local not later than the 31st day from the commencement of their employment.

(b) Each employee shall file a membership application with the Union in sufficient and reasonable time for the above purpose.

(c) The Employer shall notify the Union of new hires on approximately the first (1st) day of each month.

## Section 3 - Non-Discrimination - Equal Opportunity

(a) The Employer and the Union, in the performance of this Agreement, agree not to discriminate against any employee or applicant for employment on account of age, race, color, creed, national origin, sex or Union membership or lack thereof.

(b) The use of personal pronouns of the male gender throughout this document is for grammatical purposes only and all the terms, conditions and provisions of this Agreement shall apply equally to persons of either gender.

(c) Both parties will adhere in all respects to the Americans with Disability Act. Any dispute in respect to the proper application of the ADA shall be subject to the Grievance and Arbitration Procedure, Article XVII contained in this Labor Agreement.

Section 4 – Check-off

(a) It is agreed that the Employer will deduct each month from the pay of each employee covered by the terms of this Agreement, Union dues, initiation fees and uniform assessments and will remit same to the Secretary-Treasurer of the Union or other duly authorized representative of the Union, on or before the twentieth (20th) day of the succeeding month, following the month of deduction provided, however, that this shall apply only to said employees who voluntarily, and in writing addressed to the Employer, authorize the Employer, in their behalf, to make such deductions.

(b) The Union agrees to hold the Employer harmless from any and all liability to which he may be subjected as a result of recognizing and honoring the checkoff system provided herein.

Section 5 - Probationary Period

A new employee shall work under all the provisions of this Agreement, but he shall be employed for a one hundred and twenty (120) calendar day trial period during which he may be discharged without recourse. At the end of such trial period, and provided he has worked a minimum of forty-five (45) days, such employee shall be placed on the seniority list of the department in which he is then working and his seniority shall be dated back to his first (1st) date of employment (first day of work).

Section 6 - Store Visitation

The Secretary-Treasurer or the Business Representative of the Union shall have the right to visit each In-Store Bakery or Bake-Off during working hours upon notification to the Management.

Section 7 - BCT/Political Action Committee Contributions

The Employer agrees to honor voluntary deduction authorizations from its employees for the BCTGM/PAC. Such deductions shall be made on a yearly basis during the month of June. The Employer shall remit said deduction to the Union within thirty (30) days.

Section 8 - Travel

a) If any employee is required to work in more than one (1) store in the same day, the expense for transportation shall be borne by the Employer. The time required for travel between stores shall be included as a portion of the affected employee's work day, and considered as time worked for all purposes.

When an employee is temporarily transferred from one (1) store to another which requires additional travel, they shall be reimbursed such additional travel in accordance with the IRS reimbursement rate, except, however, when an employee chooses public transportation, except taxi cabs, they shall be reimbursed only for the actual cost of such increased transportation. Temporary assignments will not exceed thirty (30) days except in cases of relief of an employee absent on extended sick leave.

b) It is agreed that no bargaining unit employee would be laid off or reduced solely due to the use of outside bakery technicians.

## ARTICLE II - WORK WEEK AND OVERTIME

### Section 1 – Workweek

(a) Except as provided herein, no employee covered by this Agreement shall be required or permitted to work more than five (5) days in any workweek. However, where the operation of this rule will work an undue hardship on the Employer, it is agreed that such Employer shall have the right to present his difficulty to the Union, and the Union, upon consideration of the Employer's presentation, may in its discretion, grant such specific exceptions for such periods of time as the Union deems necessary. Wherever such exceptions are granted by the Union, each affected employee shall receive pay at the rate of one and one-half (1½) times for all time in excess of five (5) days in that week.

(b) The workweek shall start on Sunday and end on Saturday, consisting of five (5) working days. The work schedule shall be posted by 1:00 p.m. each Friday for the following workweek.

### Section 2 - Guaranteed Workweek

(a) Each employee (except a part-time employee) who reports for work on the first (1st) scheduled day of the week, and remains available and able to work the required week's schedule, shall be guaranteed pay for such week equivalent to not less than forty (40) hours pay at his straight time hourly rate.

(b) Such guarantee shall not apply in cases of strikes, Acts of God, power failures and other conditions beyond the control of the Employer.

### Section 3 - Daily Guarantee

(a) Each employee (except a part-time employee who shall not be scheduled for less than four (4) hours of work per day) who reports for work in accordance with his schedule shall be guaranteed eight (8) hours of work or eight (8) hours of pay in lieu thereof, unless he becomes disqualified through his own fault or in the case of sickness.

(b) Such guarantee shall not apply in cases of strikes, Acts of God, power failures and other conditions beyond the control of the Employer.

## Section 4 - Overtime Premiums

(a) An employee shall receive one and one-half (1½) times his straight time hourly rate for all hours he works in excess of eight (8) during any work day or for all hours he works in excess of forty (40) during any work week, whichever is the greater amount, but not both.

(b) If a full-time employee should be required to work on his scheduled day off, he shall receive premium compensation of one and one-half (1½) times his straight time hourly rate for all hours he works on such day off. In the event, however, that he works a sixth (6th) day in that workweek, he shall receive the straight time rate of pay for work on such sixth (6th) day.

## Section 5 - Overtime Work

(a) Any overtime available in the respective location shall be equally distributed among all the employees, within their respective classification, without discrimination.

(b) An employee shall be informed two (2) hours before the end of his work day and in emergency as early as possible, if he will be required to work overtime. When an emergency situation does not exist and the Employer has failed to give the required two (2) hour notice, the employee shall not be required to work overtime on that day. Reasonable advance notice of inability to work overtime shall be given by an employee who may otherwise be required to work overtime and the Employer shall not unreasonably reject such excuse.

## Section 6 - No Pyramiding

There shall be no pyramiding of premium pay except where provided for under other provisions in this Agreement.


## ARTICLE III - WAGES

### Section 1 – Wages

Attached hereto and made a part hereof is a separate Schedule "A" that outlines the rates of pay and certain working conditions for the classifications covered by this Agreement.

### Section 2 - Previous Experience

Newly hired and existing employees, who claim comparable, previous bakery experience at the time of hiring, shall be evaluated by management and/or working foreperson, or journeyman baker, or bake-off baker for credited said experience. Only upon proven verification or demonstrated ability will the staffer be entitled to said rate credit. Only after the completion of the probationary period shall the new hire employee be permitted to be credited with an experience rate equal to the employee's years of experience.

# ARTICLE IV – VACATIONS

## Section 1 – Entitlement

(a) Each employee covered by this Agreement shall be entitled to and must take vacations in accordance with the following schedule. The Employer is required to complete the vacation schedule for each current calendar year not later than the first (1st) of March each year.

Hired prior to October 17, 2004:

| | |
|---|---|
| After one (1) year: | one (1) week |
| After three (3) years: | two (2) weeks |
| After six (6) years: | three (3) weeks |
| After twelve (12) years: | four (4) weeks |
| After twenty (20) years: | five (5) weeks |

Hired after October 16, 2004:

| | |
|---|---|
| After one (1) year: | one (1) week |
| After five (5) years: | two (2) weeks |
| After ten (10) years: | three (3) weeks |
| After fifteen (15) years: | four (4) weeks |
| After twenty (20) years: | five (5) weeks |

## Section 2 - Vacation Pay

(a) Each employee who requests his pay before going on his vacation shall receive such pay as provided for in this Agreement.

(b) Each employee shall receive his vacation pay based on the average number of weekly hours worked during the preceding anniversary year for each week of his vacation entitlement.

## Section 3 - Pro-Rated Vacation Pay Upon Termination

Each employee leaving his employment shall receive earned vacation for the previous anniversary year if not taken by the time of separation. In addition, each employee shall receive pro-rata vacation pay calculated on the basis of one-twelfth (1/12) multiplied by each month employed during that part of the anniversary year which he worked, multiplied by the average number of weekly hours worked during the preceding anniversary year, multiplied by the employee's vacation entitlement as provided in Section 1 of this Article. The anniversary year is defined as the year starting with the individual's date of employment.

## Section 4 - Pro-Rated Vacation Pay/Layoff, Disability

After one (1) year of employment and thereafter, each full-time employee who works a minimum of sixteen hundred forty (1,640) hours, including overtime hours, during his previous anniversary year shall be qualified and receive the full contractual vacation based on his years of employment. Employees who work less than sixteen hundred forty (1,640) hours, including overtime hours, per anniversary year, shall receive a pro-rated vacation based on a fraction where the numerator represents the number of hours worked and the denominator remains a constant sixteen hundred forty (1,640) hours of his entitlement based on years of employment.

## Section 5 - Summer Vacation

(a) For available vacation weeks, employees shall be permitted to select by in-store district, classification and their respective seniority a maximum of two (2) separate weeks or two (2) consecutive weeks of vacation between the period beginning with the week of Memorial Day and concluding with the week of Labor Day.

(b) After the above bidding procedure has been completed and there are available weeks of vacation remaining between the two (2) holiday weeks, a second (2nd) round of bidding by seniority for those vacation weeks shall commence. Finally, after the vacation schedule has been completed and there are weeks of vacation which then become available due to retirement or cancellation, said weeks shall be offered by seniority starting with the most senior employee who was unable to get on the vacation schedule for two (2) weeks of vacation between the above named two (2) holidays.

## ARTICLE V – HOLIDAYS

The following days shall be holidays under this Agreement:

| | | |
|---|---|---|
| New Year's Day | Independence Day | Christmas Day |
| Presidents' Day | Labor Day | |
| Memorial Day | Thanksgiving Day | |

## Section 1 - Personal Holidays

(a) Each employee hired prior to May 10, 1997 shall be entitled to six (6) personal holidays with pay per calendar year effective the second (2nd) January 1st following their date of employment, provided the employee has worked at least one thousand (1,000) hours during the preceding twelve (12) month period. Employees hired between May 10, 1997 and August 9, 2008, shall be entitled to three (3) personal holidays per calendar year effective the second January 1st, following their date of employment, provided the employee has received pay for at least one thousand (1,000) hours during the preceding twelve (12) month period.

Employees hired after August 9, 2008, shall be eligible for Personal Holidays, as follows:
The January 1st, following one (1) year of continuous service – one (1) day
The January 1st, following two (2) years of continuous service – two (2) days
The January 1st, following three (3) years of continuous service – three (3) days

(b) Employees may bid their personal holiday entitlements for the upcoming year, at the time they place their vacation bids, and once the bid has been awarded the employee may not be bumped. Employees who elect not to exercise their personal holiday bids at the time they place their vacation bids may also bid for personal holidays by giving their Supervisor at least ten (10) days advance notice regarding their desired date, except in cases of proven emergency, no notice need be given.

In both instances above, in the event two (2) or more employees select the same date and work in the same classification and district, seniority shall prevail.

The Employer may restrict either the week before or the week of the holiday from personal holiday choice, but not both.

## Section 2 - Work on Holiday

(a) Each employee hired prior to October 17, 2004, who is required to work on any of the above holidays, shall receive two and one-half (2½) times his regular rate of pay. Overtime on holidays shall be time and one-half (1½) of the holiday rate of pay for all such time worked.

(b) In addition to holiday pay, employees hired after October 16, 2004, shall be entitled to holiday premium for all hours worked on the holiday as follows:

| | |
|---|---|
| Start | $1.00 per hour premium |
| After 2080 hours worked: | $1.50 per hour premium |
| After 4160 hours worked: | $2.00 per hour premium |
| After 6240 hours worked: | $2.50 per hour premium |

(c) A doctor's certificate shall be required for the payment of holiday pay at the straight time rate in the case a scheduled employee is prevented from working his scheduled holiday shift due to employee illness or accident.

## Section 3 - Definition of Holiday Work

All hours worked between the hours of 12:01 a.m. and 11:59 p.m. of the holiday shall be considered holiday work except Christmas, New Year's and scheduled day off.

## Section 4 - Holiday Pay

(a) Each employee with six (6) or more months of service who is not required to work on any of the above holidays shall receive pay at straight time, provided he is not on vacation and provided further he is present for work on his scheduled day before and after such holiday unless his absence is excused (excuses - sickness or death in family).

(b) In the case an employee with six (6) or more months of service is absent from work on his scheduled day before and after a holiday or is absent on one (1) of these scheduled days due to employee illness or death in the family, such employee shall be entitled to and receive holiday pay, providing the employee works at least one (1) work day during the holiday week.

## Section 5 - Sunday/Saturday Holidays

All holidays falling on Sunday will be observed on Monday. All holidays falling on Saturday shall be observed on Saturday.

## Section 6 - Christmas Day and New Year's Day

(a) Employees will not be required to work between 1:00 AM and 11:59 PM on December 25th except that work may be extended to 4:00 AM, where necessary. Should the Employer elect to operate the bake-offs on New Year's Day, such work opportunities shall first be offered by seniority and job classification and should insufficient volunteers be available, the Employer may schedule employees by inverse seniority order.

(b) If any hardship develops because of the above arrangements, either party may open this Section to resolve the problem.

(c) Christmas and New Year's will be celebrated on the actual day other language notwithstanding.

- 8 -

## ARTICLE VI - NIGHT SHIFT DIFFERENTIAL

Each employee shall be paid, in addition to his regular rate of pay, a night shift differential in the amount of thirty cents (30¢) per hour for each hour he works during the period between 4:00 p.m. and 8:00 a.m. The night shift differential shall be included in the calculation of all vacation, Sunday, holiday and overtime pay.

## ARTICLE VII - SUNDAY WORK - SUNDAY PAY - ASSIGNMENT & DEFINITION

(a) Sunday work shall be offered on the basis of seniority and the ability to perform the work within each classification. In the case that senior employees are not available for Sunday work, the Employer shall assign junior employees in inverse order of seniority. Sunday work shall be defined as: "All hours worked through and continued from the eight (8) hour scheduled shift nearest twelve noon of any Sunday shall be designated as Sunday work".

(b) For employees hired prior to October 17, 2004 pay for Sunday work shall be in the amount of time and one-half (1½) the employee's regular rate of pay. For employees hired prior to April 2, 2009 only, pay for overtime work performed on a Sunday shall be two and one quarter (2¼) times the employee's regular rate of pay.

(c) Employees hired after October 16, 2004, shall receive the premiums outlined below, for all hours worked on Sundays:

| | |
|---|---|
| Start: | $1.00 per hour worked |
| After 2080 hours worked: | $1.50 per hour worked |
| After 4160 hours worked: | $2.00 per hour worked |
| After 6240 hours worked: | $2.50 per hour worked |
| After 8320 hours worked: | Time and one-half (1½) the straight time hourly rate of pay. |

Provided, however, any such employee who works in excess of forty (40) hours per week (Sunday through Saturday inclusive) shall not be compensated for both Sunday premium and weekly overtime.

## ARTICLE VIII - INTERMISSION REST

(a) An intermission of twelve (12) hours is required between any two (2) days of work except Saturday, when an intermission of eight (8) hours will be required.

(b) Each employee shall have an unbroken rest period of thirty-three (33) hours between his shifts when such intermission includes his scheduled day off. If such time is not allowed, the prevailing rate of overtime shall be paid for any time worked within the aforementioned rest period. The foregoing restriction shall not be applicable in any week in which a holiday occurs.

# ARTICLE IX – SENIORITY

## Section 1 – Layoff

(a) When employees have to be laid-off due to insufficient work or job elimination, the affected employee will have the right to replace the junior employee within his job classification. The then displaced employee shall replace the junior employee within the bargaining unit; thereby resulting in the junior employee in the bargaining unit being laid off. In all instances, the remaining employees must be qualified to perform the work. Each employee with one (1) or more years of employment shall not lose his seniority if recalled within two (2) years immediately following the layoff. Each employee laid off with less than one (1) year of employment shall have recall rights for six (6) months following the layoff. A recall notice shall be given by registered or certified mail.

(b) Each employee who is to be laid off, based upon the provisions contained herein, shall receive a written layoff notice a minimum of one (1) calendar week in advance to the layoff date. In the case that such notice is not given, he shall be paid his normal week's pay at his regular rate of pay, which shall include the night shift differential for night hours normally worked by the employee to be laid off. A discharge for cause or the quitting of an employee shall not be construed to be a layoff.

(c) The Employer and Union agree to meet and discuss inequitable situations that may arise in the case of layoff when the contractual rules of seniority and qualification are applied.

## Section 2 - Promotion, Shift and Vacation

Promotions shall be on the basis of unit seniority, subject to relative ability and qualifications of the employee concerned. Shift preference and vacation preference shall be offered on the basis of unit seniority. Earned seniority, as a Bake-Off Assistant shall be transferred to the Plant Contract if promotion to an Apprentice takes place.

## Section 3 - Promotion to Apprentice

Each vacant apprentice position shall be offered for bid to Bakers Assistants on a bargaining unit wide basis subject to the relative ability and qualifications of the employee and awarded on the basis of bargaining unit seniority.

# ARTICLE X - LUNCH PERIOD

A lunch period of thirty (30) minutes, not included in the workday, shall be allowed as near as possible to the middle of the employee's shift. If a full-time employee is required to start his lunch period before the third (3rd) hour, or after the sixth (6th) hour, after his starting time, it shall be on Company time.

## ARTICLE XI - REST PERIOD DURING WORKING HOURS

(a) Each employee shall be granted a ten (10) minute rest period as nearly as possible in relation to the middle of each four (4) hours of work.

(b) In the event an employee is required to work nine (9) or more hours, he shall be granted an additional ten (10) minute rest period as nearly as possible in relation to the end of his eighth (8th) hour of work.

(c) Should an employee be required to work more than ten (10) hours, he shall be granted an additional ten (10) minute rest period as nearly as possible in relation to the end of his tenth (10th) hour of work.

(d) Should an employee be required to work more than twelve (12) hours, he shall be granted an additional ten (10) minute rest period as nearly as possible in relation to the end of his twelfth (12th) hour of work.

## ARTICLE XII - MANAGEMENT FUNCTION

Except as otherwise provided by specific provisions of this Agreement, the management and direction of the business, the operation and the working forces are vested exclusively in the Employer.

## ARTICLE XIII – PENSION

It is hereby agreed to provide pension and retirement benefits as follows:

(a) The Employer hereby agrees to be bound as a party by all the terms and provisions of the Agreement and Declaration of Trust dated September 11, 1955, as amended, establishing the Bakery and Confectionery Union and Industry International Pension Fund (hereinafter called the Fund) and said Agreement is made part hereof by reference.

(b) The Employer agrees to make payments to the Bakery and Confectionery Union and Industry International Pension Fund for each employee working in job classifications covered by the said Collective Bargaining Agreement as follows:

For each hour or portion thereof, for which an employee, subject to the Collective Bargaining Agreement receives pay, the Employer shall make a contribution of seventy-five cents (75¢) per hour for each hour worked up to a maximum of forty (40) hours in any week.

For the purpose of this Article, it is understood that contributions shall be payable on behalf of employees from the first (1st) day of employment, whether said employees are permanent, temporary or seasonal, or full-time or part-time employees and regardless of whether or not they are members of the Union. The term "employee" does not include a self-employed person, corporate officer, owner or partner.

(c) It is agreed that the Pension Plan adopted by the Trustees of the said Pension Fund shall be such as will qualify for approval by the Internal Revenue Service of the United States Treasury Department, so as to enable the Employer to treat contributions to the Pension Fund as a deduction for income tax purposes.

(d) Contributions provided for herein shall be paid monthly and shall be accompanied by a completed remittance report. Both payment and report are due on the tenth (10th) day of the month following the month covered by the report. In the event the Employer fails promptly to pay amounts owed, the Employer shall pay such collection costs, including court costs and reasonable attorney's fees as the Pension Fund shall incur, and shall pay interest at such rate as the Trustees shall fix from time to time.

(e) The payments so made to the Fund shall be used by it to provide retirement benefits for eligible employees in accordance with the Pension Plan of said Fund, as determined by the Trustees of said Fund, to be applied to the eligible employees based on the amount of Employer contributions.

(f) This clause encompasses the sole and total agreement between the Employer and the Union with respect to pensions or retirement.

(g) This clause is subject in all respects to the provisions of the Labor-Management Relations Act of 1947, as amended, and to any other applicable laws.

## ARTICLE XIV - HEALTH BENEFITS FUND

(a) The Employer hereby agrees to be bound as a party by all the terms and provisions of the Agreement and Declaration of Trust dated August 7, 2002, as amended, establishing the Bakers Union and F.E.L.R.A. Health and Welfare Benefits Fund (hereinafter called the Fund) and said Agreement is made part hereof by reference.

(b) The Employer agrees to make payments to said Fund for each employee working in job classifications covered by the said Collective Bargaining Agreement as follows:

For each hour or portion thereof for which an employee, subject to the Collective Bargaining Agreement, receives pay, the Employer agrees to pay the necessary maintenance cost up to the full amount as then notified by the Board of Trustees of said Fund in order for the Employer to continue to provide the existing health benefits plan to the employees, at no cost to the employees (as established in the contract negotiations of August 2008, and which may be modified from time to time with unanimous approval of the Fund's Board of Trustees). Said contribution shall be limited up to a maximum of forty (40) hours in any week conditioned by the provisions set out in paragraph (h). In no event shall the contribution for part-time employees amount to less than ninety-six (96) hours per month.

Contributions on behalf of full time employees shall commence with the first payroll month following the completion of three (3) months of continuous service with the Employer. Contributions on behalf of part time employees shall commence with the first payroll month following the completion of fifteen (15) months of continuous service with the Employer.

The term "employee" does not include a self-employed person, corporate officer, owner or partner.

(c) The payments made in accordance with (b) above, shall be allocated as follows:

To provide health benefits effective August 9, 2008 for eligible employees and their eligible dependents (if any), in accordance with Plan I and Plan II of said Fund.

(d) If at any time during the term of the Agreement, or any renewal or amendment thereof, there should be enacted any Federal or State laws or regulations requiring the Employer to secure, provide or pay for insurance or health benefits or coverage not provided for under the Fund, either party hereto may, upon thirty (30) day's notice to the other, reopen this Agreement solely for the limited purposes of making such adjustments as may be appropriate in the light of said new laws or regulations.

(e) Contributions provided for herein shall be paid monthly and shall be accompanied by a completed remittance report. Both payment and report are due on the tenth (10th) day of the month following the month covered by the report. In the event the Employer fails promptly to pay amounts owed, the Employer shall pay such collection costs, including court cost and reasonable attorney's fees as the Health Benefits Fund shall incur and shall pay interest at such rate as the Trustees shall fix from time to time.

(f) This Article encompasses the sole and complete Agreement between the Employer and the Union with respect to insurance or health benefits or coverage.

(g) This Article is subject in all respects to the provisions of the Labor Management Relations Act of 1947, as amended, and to any other applicable laws.

(h) In the case that the Employer determines that the existing benefit plan can be provided to the employees at a lower cost to the Company on a self-insured basis without any reduction in benefits and no cost to the employees, in such event, this Local Union must receive the guarantees from the Employer and the Bakers Union and FELRA Health Benefits Fund.

(i) The parties agree that employees hired on or after April 2, 2009, shall be obligated to pay the following weekly co-premium under the terms of the applicable plan, effective with the month in which coverage by the Bakers Union and FELRA Health and Welfare Benefits Fund starts, and will continue every month in which they are eligible for benefits.

$5.00 – Individual      $10.00 – Individual + 1      $15.00 – Family

Employees choosing not to pay the premium co-pay of $5.00/$10.00/$15.00 per week for health & welfare will not be entitled to benefits. If an employee chooses not to opt for benefit coverage, they may not reapply for coverage until the open enrollment period for the next calendar year.

## ARTICLE XV - LEAVE OF ABSENCE WITHOUT PAY

Each employee with three (3) or more months of continuous employment shall be granted Leaves of Absence, which shall not interrupt his service record, subject to the following:

(a) In case of an employee's absence from work in excess of six (6) consecutive calendar months due to a proven medical disability, the Employer shall grant a Leave of Absence. Each disabled employee shall apply for a Leave of Absence on a form supplied by the Employer. Such application shall be filed during the seventh (7th) but before the end of the eighth (8th) month of the employee's absence due to any disability. The Employer shall grant a Leave of Absence effective with the date application was made, for duration of one (1) month leave for each month of continuous employment, up to a maximum of one (1) year of leave for employees with one (1) year or more of continuous employment.

(b) An employee who is absent from work due to any disability connected with or covered by the Workers Compensation Act shall not be required to apply for a Leave of Absence. Such employee, when recovered, shall return to work with no loss of seniority providing he returns within two (2) years from the onset of his disability.

(c) The Employer is not required to grant Leaves of Absence to employees based on conditions other than those described in this Section, except as the Employer is granting leaves under the Family Medical Leave Act.

(d) Medical disability (for the purpose of this Section) defined: Any disability, excluding disabilities covered by the Workers Compensation Act, caused by or as a direct result of illness, accident or pregnancy.

## ARTICLE XVI - SICK LEAVE

Sick leave shall be provided as follows:

(a) Accrual shall start after one hundred twenty (120) days of employment.

(b) The Employer will pay each regular employee sick leave based on accrual of four (4) hours sick leave [one hundred percent (100%) of gross pay for four (4) straight time hours] for each month of service, up to one hundred forty-four (144) hours.

(c) Each employee who is absent from work in excess of three (3) days due to accident, illness or disability, shall receive sick leave payments effective with his first (1st) day of absence. Employees who are absent from work three (3) days or less shall receive sick leave payments effective with his second (2nd) day of absence.

(d) In order to receive sick leave payments, an employee must be absent from work because of a disability caused by sickness or non-compensable accident. Such disability must be affirmed by acceptable medical statement in the case the absence from work exceeds one (1) working day. This provision applies to this Article only. Acceptable medical statement shall be defined as a physician's statement on a Company form. Such form shall confine itself to the period of absence, cause of current illness (diagnosis), signed by a physician including

printed or typed name and address of physician. It will also specify the particular conditions of medical release. In addition, the forms necessary to request sick leave shall be available at each location where a bargaining unit employee is assigned.

(e) In case of compensable accident where the employee is drawing compensation as provided by the Workers Compensation Act, the employee shall have the right to draw on his accumulated sick leave credits so as to make up the difference between such Workers Compensation and his average straight time hours pay per week.

(f) Where the employee is eligible for "Accident or Sickness" benefit under Bakers FELRA Health and Welfare Benefits Fund, the employee shall have the right to draw upon his accumulated sick leave credits so as to make up the difference between the benefits mentioned herein and his average straight time hours pay per week.

(g) Leave with pay as aforesaid shall be granted to the extent that sick leave credit has been accumulated. The amount of leave so granted shall be charged against the balance of the credit available at the time of the illness, thereby reducing the balance.

(h) Employees must notify the Employer of such illness as early as possible but not later than one (1) hour before the beginning of shift on the first (1st) day of absence, unless illness is of such nature that employee is rendered incapable of compliance with this requirement.

(i) Sick leave benefits will not be paid to employees while on vacation. There shall be no duplication of payments for the same day.

(j) Employment must be continuous to entitle employee to sick leave benefits.

(k) The Employer shall post April 1st of each year, a list containing the names of all employees and each employee's total number of sick leave accumulated.

## ARTICLE XVII - GRIEVANCE AND ARBITRATION PROCEDURE

### Section 1 - Discharge and Discipline

No employee shall be discharged or otherwise disciplined except for just cause.

### Section 2 - Grievance Procedure

Should any grievance or dispute arise concerning the interpretation or application of this Agreement, it shall be handled in the following manner:

(a) Within ten (10) days following any alleged violation of the Agreement or ten (10) days from the date the grievant first having knowledge thereof, the aggrieved party shall present his grievance to the Local Union and the Union Representative, together with the grievant, shall present the grievance to the designated Employer Representative of the aggrieved party.

(b) If such parties are unable to resolve the grievance with the Employer Representative within seven (7) working days, the Business Representative of the Local Union shall reduce the

grievance to writing and present it to the Employer's Labor Relations Department with a copy to the District Manager of the grievant.

(c) The written grievance shall be reviewed by the Employer Representative and the Union's Business Representative and they shall make every possible effort to resolve same. If such parties are unable to resolve the grievance within twenty-one (21) days following the date it was presented to them, it shall thereupon be referred to arbitration as documented below.

(d) It is expressly understood and agreed that no employee shall have the right to compel arbitration without the written consent of the Union.

## Section 3 - Arbitration Procedure

(a) Within the twenty-one (21) day period referred to above, the grieving party shall notify the Federal Mediation and Conciliation Service of the need to designate an arbitrator in accordance with the rules and regulations of that Agency.

(b) The arbitrator shall consider each case solely on its merits and this Agreement shall constitute the basis upon which the decision shall be rendered. The arbitrator shall have no power to alter, amend, revoke or suspend any of the provisions of this Agreement.

(c) The decision of the arbitrator shall be binding upon both parties for the duration of the Agreement.

(d) Should any party fail, upon written notice, to appear before the arbitrator in any matter submitted for arbitration as herein provided, the arbitrator may proceed with the hearing and render his decision upon the testimony and evidence presented, which decision shall be binding and shall have the same force and effect as if both parties were present.

(e) The arbitrator's decision shall be based only on evidence presented to him in the presence of both parties or otherwise made available to both parties.

(f) The Employer shall have access to the grievance and arbitration procedures where necessary.

## ARTICLE XVIII - STRIKE AND LOCKOUT.

(a) There shall be no strike, interruption of work, boycott or temporary walkout on the part of the Union or the employees, and no lockout on the part of the Employer during the term of this Agreement, except for:

(1) Refusal to comply with the arbitration machinery set forth herein, or

(2) Refusal to comply with the decision of the Board of Arbitration.

(b) However, it is understood that the Union shall not be liable in any manner whatsoever for fulfillment of its obligation to the Bakery, Confectionery and Tobacco Workers and Grain Millers International Union or the Greater Washington Central Labor Council, AFL-CIO, that obligation being that members of the Union may refuse to cross a lawful picket line. No

employee shall be disciplined or discharged for refusal to cross a lawful picket line. The Union will give the Employer forty-eight (48) hours written notice before observing a lawful picket line.

(c) In the event picketing or any other economic activity by the Union or other Union or individual occurs at the Employer's premises, the Union hereby agrees that it will instruct its members to move, finish up, transport and otherwise handle all perishable commodities for a period of seventy-two (72) hours after such picketing or economic activity commences. The Union further agrees that during this seventy-two (72) hour period, it and its members will not interfere with the movement, transport or handling of perishable commodities which are to be moved, transported or handled by its members or by employees who are members of other labor organizations.

## ARTICLE XIX - SEVERANCE PAY

### Section 1

(a) It is agreed that each employee who is displaced from his employment by reason of the closing of the entire Plant, a department thereof, or by introduction of labor saving equipment, shall be compensated for such displacement, providing he has been actively employed by the Employer for a period of at least three (3) years. An eligible employee's compensation for his displacement shall be on the basis of thirty (30) hours of severance pay (at his straight time hourly rate of pay) for each full year, or major portion of a year, of his actual employment, commencing with the fourth (4th) year thereof. Payment under this formula shall be limited to a maximum of twenty-two and one half (22½) weeks [i.e., maximum of nine hundred (900) hours of severance pay].

### Section 2

The above-described severance pay will not be paid to:

(a) Any employee who is offered and accepts employment with the Employer at the same location.

(b) Any employee who accepts a job with the Employer at any location providing the job is covered by the jurisdiction of Bakers, Confectionery, Tobacco and Grain Millers Workers International Union, Local 118 so that the employee can continue to earn pension credits.

(c) Any employee who voluntarily quits or is discharged for cause before he is separated from employment by the Employer.

(d) Any employee accepting severance pay. Such employee shall forfeit and cease to have any seniority and recall rights as provided for in this Agreement.

### Section 3

(a) Any employee reemployed after receiving severance pay shall be considered a new employee from the date of reemployment.

(b) In the event an eligible employee wishes to remain on the seniority list, for the purpose of possible recall, he may elect to defer acceptance of his severance pay for a period of twelve (12) months. At any time during such period of twelve (12) months, however, he may request his severance pay and his right of recall and seniority shall terminate as of that date.

(c) If such employee has not been recalled by the end of such period, he shall be mailed his severance pay and his right of recall and seniority shall terminate as of that date.

## ARTICLE XX - GENERAL PROVISIONS

### Section 1 – Contributions

No employee hired prior to April 2, 2009, shall be required to subscribe to or contribute any money toward any fund in his place of employment, which has not been endorsed by the Union or provided for by law. The parties further agree that this provision does not apply to employees hired on or after April 2, 2009 who are required to pay co-contributions in order to receive health and welfare benefits.

### Section 2 - Sole Agreement

This Agreement and its attachments constitute the entire Agreement between the parties and supersedes all previous written and oral understandings.

### Section 3 - Funeral Leave

(a) In the case of death of brother, sister, grandparent and/or parent-in-law of any employee, the Employer shall grant to the employee a leave of absence consisting of three (3) consecutive working days with pay or in the event of the death of a grandchild, the Employer shall grant one (1) working day with pay. Such funeral leave shall be scheduled within seven (7) days following the date of death. The three (3) working days of paid funeral leave or any portion thereof may not be provided in the case that any of these three (3) days or all of them within the seven (7) day period, fall during previous scheduled vacation, during period of illness and during other previous scheduled absences from work.

(b) In the case of death of mother or step mother, but not both and father or step father, but not both, spouse or child, each employee is guaranteed a bereavement leave consisting of five (5) working days with pay.

### Section 4 - Jury Duty

The Employer agrees to pay the difference for time, which an employee is required to lose on account of service on a jury. This difference will be computed at the employee's straight time hourly pay at a maximum of eight (8) hours per day or days involved less his compensation for being required to serve on such jury.

### Section 5 – Uniforms & Union Label

(a) The Employer agrees to furnish to each employee covered by this Agreement pants, aprons and hats.

- 18 -

(b) The label of the International Union shall be placed on all products weighing one-half (½) pound or more.

## Section 7 - Technology Changes

(a) The Employer agrees to notify the Union at the earliest possible time of any plans to make substantial changes in existing production processes, machinery or work methods.

(b) The Employer further agrees to provide reasonable and appropriate training and refresher training necessary for the employees to perform bargaining unit work on new equipment, including any newly created unit jobs, or to perform other work to which employees might be reassigned or transferred. The Employer further agrees to discuss with the Union the design and delivery of training programs and agrees to consider the seniority standing within classifications in the selection of employees for training and retraining and job assignments necessary due to new technology.

## Section 8 - Shop Steward Education

One time each calendar year, the Employer shall provide on request by the Union, one (1) eight (8) hour paid day at the straight time rate for a Shop Steward from the in-store to attend a Union Education Conference. The Employer will be notified two (2) weeks in advance of the Conference.

## ARTICLE XXI - DURATION OF AGREEMENT

This Agreement shall be in full force and effect from August 10, 2008, to and including August 11, 2012, and thereafter until a new Agreement has been consummated and signed; or this Agreement, after the above expiration date, has upon notice been canceled or terminated by the Employer or by Bakers' Local Union No. 118.

FOR THE EMPLOYER:                              FOR THE UNION:

Eric D. Weiss                                  Allen R. Haight
Vice President of Labor Relations              President

- 19 -

## SCHEDULE "A"

It is specifically agreed and understood that the following terms and conditions shall apply to Bake-off Bakers and Assistants.

### Section 1 - Conditions/Bake-off Assistants

(a) Full time bake-off assistant shall not be scheduled for less than eight (8) hours a day and part time bake-off assistant shall not be scheduled for less than four (4) hours a day.

(b) Assistants shall be entitled to and receive vacation, funeral leave and holidays on a pro-rated basis.

(c) Based upon their ability to do the available work, Bake-off Assistants shall be scheduled for work in their regular assigned store for the most hours in that store based upon bargaining unit seniority.

(d) There shall be at least one (1) full time bake-off assistant in stores where volume supports such designation.

### Section 2 - Wages/Bake-off Assistant

(a) The following general wage increases shall be paid only to employees who are at or above the top of the scale as of the effective date of the increase. These wage increases shall apply to the employee only. The top of the scale progression rates will remain unchanged, and these wage increases shall not be applied, proportionally or otherwise, to any step in the wage progressions for these classifications:

| 08/10/08 | 08/09/09 | 08/08/10 | 08/07/11 |
|----------|----------|----------|----------|
| 40¢ | 35¢ | 35¢ | 40¢ |

(b) For employees hired, or appointed, between June 29, 1994 and October 16, 2004; the wage rates will remain the same for the duration of the contract:

| | |
|---|---|
| First (1st) Year | $10.5375 |
| Second (2nd) Year | $11.2400 |
| Third (3rd) Year | $11.9425 |
| Fourth (4th) Year | $12.6450 |
| Fifth (5th) Year | $13.3475 |
| Thereafter | $14.0500 |

After reaching the top of the scale, these employees will be eligible to receive the next scheduled wage increases on the effective dates noted above, but these wage increases will apply to the employee only, and shall not result in any change to the contract progression rates.

(c) For employees hired, or appointed, after October 16, 2004, the wage rates will remain the same for the duration of the contract:

| | |
|---|---|
| Start | $ 9.60 |
| After 2080 hours worked: | $10.24 |
| After 4160 hours worked: | $10.88 |
| After 6240 hours worked: | $11.52 |
| After 8320 hours worked: | $12.16 |
| After 10,400 hours worked: | $14.05 |

After reaching the top of the scale, these employees will be eligible to receive the next scheduled wage increases on the effective dates noted above, but these wage increases will apply to the employee only, and shall not result in any change to the contract progression rates.

## Section 3 - Wages/Working Conditions/Bake-off Baker

Job classification of Bake-off Baker:

(a) The Bake-off Baker will be a full time position.
(b) The Bake-off Baker shall perform all the job functions of the Bake-off Assistant, including mixing and compounding.
(c) The Bake-off Baker will assume the other job responsibilities as outlined in the "Lead Bake-off Assistant" classification which will be renamed "Bake-off Baker".
(d) The Bake-off Baker will be selected from amongst candidates in the Bake-off Assistant classification.
(e) The rate of pay for the Bake-off Baker shall be one dollar and twenty-five cents ($1.25) above the contract rate for a Bake-off Assistant.
(f) Assignment of the Bake-off Baker shall be left to the discretion of the Employer.

## Section 4 - Swing Employees

(a) Only volunteers, newly hired employees or the most recently hired employees shall be assigned to perform swing work provided they are qualified. The work schedule for each swing employee shall be posted in their home store by 1:00 p.m. each Friday and shall list the store assignment and shift. The Employer agrees to fully implement the above by January 1, 1992.



# GIANT FOOD, LLC

**ERIC D. WEISS**
VICE PRESIDENT
LABOR RELATIONS

8301 PROFESSIONAL PLACE, SUITE 115
LANDOVER, MD 20785
PHONE (301) 341-4798
FAX (301) 618-4964

August 10, 2008

Mr. Allen R. Haight
President
Bakers Local Union No. 118
2706 Bladensburg Road, NE
Washington, DC 20018

Re:    Traveling Foreman

Dear Mr. Haight:

The purpose of this letter is to memorialize the understanding reached in January 2007 in regards to the above referenced subject.

In the event the Employer promotes an employee from within the Journeyman Baker Contract (i.e. Plant Contract) into the position of a Traveling Foreman, they will be paid a rate of pay equal to that of a Bake-Off Manager ($20.36), and they shall remain covered under the Journeyman Baker Contract.

It is expressly understood that this Agreement shall in no way constitute a requirement or obligation by the Employer to utilize the Traveling Foreman position, and nothing herein shall prevent the Employer from eliminating this position in the future.

Sincerely,

Eric D. Weiss
Vice President of Labor Relations

FOR THE UNION:

Bakers Local Union No. 118

Date:

- 30 -



# GIANT FOOD, LLC

**ERIC D. WEISS**
VICE PRESIDENT
LABOR RELATIONS

8301 PROFESSIONAL PLACE, SUITE 115
LANDOVER, MD 20785
PHONE (301) 341-4798
FAX (301) 618-4964

August 10, 2008

Mr. Allen R. Haight
President
Bakers Local Union No. 118
2706 Bladensburg Road, NE
Washington, DC 20018

Re:    Flexibility of Job Functions

Dear Mr. Haight:

The purpose of this letter is to memorialize the understanding reached during bargaining in October 2004 in regards to the above referenced subject.

It is understood that all bargaining unit employees agree to acknowledge and assist customers if clerks are otherwise not available. However, bargaining unit employees will not be scheduled to replace clerks who are absent, nor will they be scheduled to perform clerk work.

Sincerely,

Eric D. Weiss
Vice President of Labor Relations

FOR THE UNION:

Bakers Local Union No. 118

Date:



# GIANT FOOD, LLC

**ERIC D. WEISS**
VICE PRESIDENT
LABOR RELATIONS

8301 PROFESSIONAL PLACE, SUITE 115
LANDOVER, MD 20785
PHONE (301) 341-4798
FAX (301) 618-4964

August 10, 2008

Mr. Allen R. Haight
President
Bakers Local Union No. 118
2706 Bladensburg Road, NE
Washington, DC 20018

Re:    H&W Reserve Drawdown

Dear Mr. Haight:

This letter is to confirm our understanding that the parties will adjust contributions to bring the reserves to, but not below, a three (3) month reserve floor within the first twelve (12) months of the new contract.

Sincerely,

Eric D. Weiss
Vice President of Labor Relations

FOR THE UNION:

Bakers Local Union No. 118

Date:



# GIANT FOOD, LLC

**ERIC D. WEISS**
VICE PRESIDENT
LABOR RELATIONS

8301 PROFESSIONAL PLACE, SUITE 115
LANDOVER, MD 20785
PHONE (301) 341-4798
FAX (301) 618-4964

August 10, 2008

Mr. Allen R. Haight
President
Bakers Local Union No. 118
2706 Bladensburg Road, NE
Washington, DC 20018

Re:    Employees between Stores

Dear Mr. Haight:

This letter is to confirm our understanding that employees may be used between stores in the same day, but shall be paid for all hours in the service of the Company.

Sincerely,

Eric D. Weiss
Vice President of Labor Relations

FOR THE UNION:

Bakers Local Union No. 118

Date:



# GIANT FOOD, LLC

**ERIC D. WEISS**
VICE PRESIDENT
LABOR RELATIONS

8301 PROFESSIONAL PLACE, SUITE 115
LANDOVER, MD 20785
PHONE (301) 341-4798
FAX (301) 618-4964

August 10, 2008

Mr. Allen R. Haight
President
Bakers Local Union No. 118
2706 Bladensburg Road, NE
Washington, DC 20018

Re: Supervisor's Area for Seniority Applications

Dear Mr. Haight,

This letter is to confirm our understanding that with respect to the application of seniority for the purposes of transfers, vacation bidding, and personal holiday bidding, the Supervisor's Area shall govern.

Sincerely,

Eric D. Weiss
Vice President of Labor Relations

FOR THE UNION:

Bakers Local Union No. 118

Date: April 18, 2010

- 34 -