# LABOR AGREEMENT

BETWEEN

# GIANT FOOD LLC
## BAKERY PLANT CONTRACT

AND

# B.C.T.G.M.I.U., AFL-CIO
# LOCAL 118 WASHINGTON, D.C.

### AUGUST 10, 2008 - AUGUST 11, 2012

(Journeyman Baker)

## TABLE OF CONTENTS

ARTICLE I - RECOGNITION AND UNION SECURITY.................................................2
ARTICLE II - WORK WEEK AND OVERTIME........................................................4
ARTICLE III - WAGES .......................................................................5
ARTICLE IV - WORKING CONDITIONS ........................................................6
ARTICLE V - VACATIONS .....................................................................8
ARTICLE VI - HOLIDAYS.....................................................................10
ARTICLE VII - SUNDAY WORK - SUNDAY PAY -
ASSIGNMENT & DEFINITION.................................................................12
ARTICLE VIII - INTERMISSION REST .......................................................13
ARTICLE IX - SENIORITY ...................................................................13
ARTICLE X - LUNCH PERIOD ...............................................................15
ARTICLE XI - REST PERIOD DURING WORKING HOURS ...................................15
ARTICLE XII - JOBBERS......................................................................16
ARTICLE XIII - MANAGEMENT FUNCTION ................................................16
ARTICLE XIV - PENSION ....................................................................16
ARTICLE XV - HEALTH BENEFITS FUND ..................................................17
ARTICLE XVI - SICK LEAVE ...............................................................19
ARTICLE XVII - LEAVE OF ABSENCE WITHOUT PAY ...................................20
ARTICLE XVIII - GRIEVANCE AND ARBITRATION PROCEDURE.....................21
ARTICLE XIX - STRIKE AND LOCKOUT ...................................................23
ARTICLE XX - SEVERANCE PAY ..........................................................23
ARTICLE XXI - GENERAL PROVISIONS ...................................................24
ARTICLE XXII - DURATION OF AGREEMENT .............................................25
SCHEDULE "A" .............................................................................26
SCHEDULE "B"..............................................................................28

# AGREEMENT

This Agreement, made and entered into this 4th day of March 2009, which shall be in full force and effect from August 10, 2008, to and including August 11, 2012, by and between Giant Food LLC, hereinafter referred to as the "Employer" and the Bakery, Confectionery, Tobacco Workers and Grain Millers International Union, AFL-CIO, Bakers' Local Union No. 118, hereinafter referred to as the "Union" who jointly agree as follows:

Not to use any subterfuge, coercion, or intimidation, directly or indirectly, to evade or frustrate the compliance with the spirit and the terms of this Agreement, nor cause the discharge or furlough of any member of the Union because of any Union activities.

## ARTICLE I - RECOGNITION AND UNION SECURITY

The Employer recognizes Bakers' Local Union No. 118 of the District of Columbia as the sole collective bargaining agent for each employee covered by this Agreement.

### Section 1 – Jurisdiction

As an accretion to the Silver Spring, Maryland, Plant, effective retroactive to May 3, 1981, the Employer recognizes the Union as the sole collective bargaining representative of all the employees working at the 7081 Oakland Mills Road, Columbia, Maryland, location and at any other bakery, shipping and warehousing operation to be opened or relocated in the future which will then be located in Fredericksburg, Virginia, or located in Virginia but geographically situated north of a straight line drawn from Colonial Beach in the east to Churchville in the west. The parties acknowledge that they have not hereby reached any agreement or established any boundaries concerning facilities north of Washington, D.C., that may hereafter be opened at locations not specified or described herein.

### Section 2 - Union Membership

(a) The parties agree that each employee, subject to the jurisdiction of Bakers' Local Union No. 118, shall become a member of the respective local not later than the thirty-first (31st) day from the commencement of their employment.

(b) Each employee shall file a membership application with the Union in sufficient and reasonable time for the above purpose.

(c) The Employer shall notify the Union of new hires on approximately the first (1st) day of each month.

### Section 3 - Non Discrimination-Equal Opportunity

(a) The Employer and the Union, in the performance of this Agreement, agree not to discriminate against any employee or applicant for employment on account of age, race, color, creed, national origin, sex or Union membership or lack thereof.

(b) The use of personal pronouns of the male gender throughout this document is for grammatical purposes only and all the terms, conditions and provisions of this Agreement shall apply equally to persons of either gender.

(c) Both parties will adhere in all respects to the Americans with Disability Act. Any dispute in respect to the proper application of the ADA shall be subject to the Grievance and Arbitration Procedure, Article XVIII contained in this Labor Agreement.

## Section 4 – Check-off

(a) It is agreed that the Employer will deduct each month from the pay of each employee covered by the terms of this Agreement, union dues, initiation fees and uniform assessments, and will remit same to the Secretary-Treasurer of the Union or other duly authorized representative of the Union, on or before the twentieth (20th) day of the succeeding month, following the month of deduction, provided, however, that this shall apply only to said employees who voluntarily and in writing addressed to the Employer, authorize the Employer on their behalf to make such deductions.

(b) The Union agrees to hold the Employer harmless from any and all liability to which he may be subjected as a result of recognizing and honoring the check-off system provided herein.

## Section 5 - Probationary Period

A new employee shall work under all the provisions of this Agreement, but he shall be employed for a one hundred twenty (120) calendar day's trial period during which he may be discharged without recourse. At the end of such trial period, and provided he has worked a minimum of forty-five (45) days, such employee shall be placed on the seniority list of the department in which he is then working and his seniority shall be dated back to his first (1st) date of employment (first work day).

## Section 6 - Plant Visitation

The Secretary-Treasurer or the Business Representative of the Union shall have the right to visit the Bakery during working hours upon notification to the Management.

## Section 7 - BCT/Political Action Committee Contributions

The Employer agrees to honor voluntary deduction authorizations from its employees for the BCT/PAC. Such deductions shall be made on a yearly basis during the month of June. The Employer shall remit said deduction to the Union within thirty (30) days.

## Section 8 - Travel

a) If any employee is required to work in more than one (1) store in the same day, the expense for transportation shall be borne by the Employer. The time required for travel between stores shall be included as a portion of the affected employee's work day, and considered as time worked for all purposes.

When an employee is temporarily transferred from one (1) store to another which requires additional travel, they shall be reimbursed such additional travel in accordance with the IRS reimbursement rate, except, however, when an employee chooses public transportation, except taxi cabs, they shall be reimbursed only for the actual cost of such increased transportation. Temporary assignments will not exceed thirty (30) days except in cases of relief of an employee absent on extended sick leave.

b) It is agreed that no bargaining unit employee would be laid off or reduced solely due to the use of outside bakery technicians.

## ARTICLE II - WORK WEEK AND OVERTIME

### Section 1 - Workweek

(a) Except as provided herein, no employee covered by this Agreement shall be required or permitted to work more than five (5) days in any workweek. However, where the operation of this rule will work an undue hardship on the Employer, it is agreed that such Employer shall have the right to present his difficulty to the Union, and the Union, upon consideration of the Employer's presentation, may in its discretion grant such specific exceptions for such periods of time as the Union deems necessary. Wherever such exceptions are granted by the Union, each affected employee shall receive pay at the rate of one and one-half (1½) times for all time in excess of five (5) days in that week.

(b) Work shifts on Saturday will start no later than 6:30 a.m. and where an employee is required to work beyond 3:00 p.m. he will be paid one and one-half (1½) times his straight time rate of pay.

Volunteers or employees hired after June 29, 1994 may be scheduled anytime on Saturday as a regular day of work.

(c) The work week shall start on Sunday and end on Saturday, consisting of five (5) working days. The work schedule shall be posted by 1:00 p.m. each Thursday for the following workweek.

### Section 2 - Guaranteed Workweek

(a) Each regular employee who reports for work on the first (1st) scheduled day of the week, and remains available and able to work the required week's schedule, shall be guaranteed pay for such week equivalent to not less than forty (40) hours of pay at his straight time hourly rate.

(b) A Jobber shall not be considered as a regular employee for the purpose of the weekly guarantee.

(c) Such guarantee shall not apply in cases of strikes, Acts of God, power failures and other conditions beyond the control of the Employer.

## Section 3 - Daily Guarantee

(a) Each employee who reports for work in accordance with his schedule shall be guaranteed eight (8) hours of work or eight (8) hours of pay in lieu thereof, unless he becomes disqualified through his own fault or in case of sickness.

(b) Such guarantee shall not apply in cases of strikes, Acts of God, power failures and other conditions beyond the control of the Employer.

## Section 4 - Overtime Premiums

(a) An employee shall receive one and one-half (1½) times his straight time hourly rate for all hours he works in excess of eight (8) during any work day or for all hours he works in excess of forty (40) during any work week, whichever is the greater amount, but not both.

(b) If an employee should be required to work on his scheduled day off, he shall receive premium compensation of one and one-half (1½) times his straight time hourly rate for all hours he works on such day off. In the event, however, that he works a sixth (6th) day in that workweek, he shall receive the straight time rate of pay for work on such sixth (6th) day.

(c) All overtime rates provided for in this Agreement shall be paid at the rate of one and one-half (1½) times the regular rate of pay for such overtime hours.

## Section 5 - Overtime Work

(a) Any overtime available in the Plant shall be equally distributed among all the employees, within their respective classifications, without discrimination.

(b) An employee shall be informed by his Foreman two (2) hours before the end of his work day and in emergency as early as possible, if he will be required to work overtime. When an emergency situation does not exist and the Foreman has failed to give the required two (2) hour notice, the employee shall not be required to work overtime on that day. Reasonable advance notice of inability to work overtime shall be given by an employee who may otherwise be required to work overtime and the Employer shall not unreasonably reject such excuse.

## Section 6 - No Pyramiding

There shall be no pyramiding of premium pay except where provided for under other provisions in the Agreement.


## ARTICLE III - WAGES

Attached hereto and made a part hereof are separate Schedules "A" and "B" which outline the rates of pay and certain working conditions for the various classifications covered by this Agreement.

## ARTICLE IV - WORKING CONDITIONS

### Section 1 - Working Foreman

An employee whose duties in addition to producing baked goods shall consist of directing, instructing other employees in production procedures and requirements, regulating breaks and lunch periods in his area of responsibility, but he shall not have the right to hire or discharge employees.

### Section 2 - Lead man/Miscellaneous

A Lead man/Miscellaneous shall be considered to be a Working Foreman in the Miscellaneous Department. His duties, in addition to working, shall consist of directing other employees in his department, of instructing them in regards to production procedures, and to regulating breaks and lunch periods in his department. He shall not have the right to hire or fire employees.

### Section 3 - Journeymen

(a) No one but a Journeyman Baker or Apprentice shall do any of the following work: Weigh ingredients for any mixture or attend a mixer while compounding any formula; attend to the aging of dough after mixing; remove dough to trough after aging; mold or round up dough into shapes; place molded dough into cloth, boxes, or pans; handle a peel in any way at ovens or peel vienna or other bread or rolls from cloths and boxes to peel or oven plate; fill all kinds of pie. No pastry work shall be handled by anyone except a Journeyman Baker or Apprentice until it is iced and finished ready for sale.

(b) On automatic machines, Journeyman Bakers or Apprentices shall be employed whenever it is necessary to place bread and other bakery products in the ovens by hand. No one but a Journeyman Baker or an Apprentice shall handle dough or ingredients in any form during the process of manufacture of any bakery products, and no one but Journeyman Bakers and Apprentices shall be employed in mixing rooms, sponge rooms and aging rooms to assist in any way in the mixing of or transferring from one receptacle to another, or aging of any sponge or remix dough (except as provided for in Article IV, Section 5, Section 7 and Section 8).

### Section 4 – Apprentices

(a) The Company agrees to train no less than two (2) employees per year in a twelve (12) month apprenticeship program. Each apprentice will be expected to learn all the duties of the Journeyman Baker. Upon successful completion of the apprenticeship program, employees shall be promoted to the classification of Journeyman Baker.

(b) Any employee who becomes an Apprentice Baker shall not receive any reduction in pay.

### Section 5 - Bakers' Helpers

(a) The number of Helpers to be employed, including flour sifters, shall be left to the discretion of the Employer.

(b) The work of a Baker's Helper shall consist of all work directly connected with the work of a Journeyman Baker, such as greasing and washing of pans and molds and other utensils used in the trade, and preparation of same for use by the Journeyman Baker; assisting the Baker at the ovens; dumping or removing of bakery products from pans or molds; and generally assisting the Baker around the shop. He may be assigned to perform the work of transferring icing from mixing bowl to icing machine, putting lids on pullman pans and assigned to the opening of fruit and vegetable cans and to dumping the contents of such cans into mixing bowl or holding container. However, at no time shall the Baker's Helper be required or permitted to infringe on the work of a Journeyman or Apprentice Baker.

Any worker in a Bakery or Confectionery Shop who is not a bargaining unit member shall not be required or permitted to infringe on the work of the Baker's Helper (except as provided in Article IV, Section 8).

## Section 6 - Miscellaneous Workers

(a) The number of miscellaneous workers employed shall be left to the discretion of the Employer.

(b) No one but a Miscellaneous Worker shall be allowed to do any of the following work (except as provided for in Article IV, Section 5, Section 7 and Section 8): Operating or setting machines, checking and distributing of bakery products.

(c) During times of increased production or emergency situations that would deplete the number of Journeyman Bakers available, a Miscellaneous Worker may perform such work at the appropriate Journeyman rate.

## Section 7 - Bakery Utility Worker

(a) The Employer may classify new employees hired on or after May 9, 1982, as Bakery Utility Workers, and such new hired employees can be assigned to perform work in the Baker's Helper and/or Miscellaneous Worker's classification at the Miscellaneous Worker's hourly rate of pay.

(b) Utility/Jockey employees shall be considered a separate department for vacation, scheduling and shift preference.

If such employee has his license suspended, the Employer will assign him to the first available opening on the least attractive shift in the bakery operation.

(c) During times of increased production or emergency situations that would deplete the number of Journeyman Bakers available, a Utility Worker may perform such work at the appropriate Journeyman rate.

## Section 8 - Non-Working Supervisory Employees

(a) Such employee shall not do any work usually performed by an employee covered by this Agreement except:

(1) For the purpose of instructing employees;
(2) To perform experimental work;
(3) In situations over and beyond the control of the Employer.

## Section 9 - Instructors and Demonstrators

The Shop Steward will be informed when an instructor or a demonstrator is on the premises.

## Section 10 - Sanitary Conditions

All shops must be kept in a sanitary condition, and all employees working in the shops must keep themselves in a clean and sanitary condition. Cool drinking water is to be available at all times for employees in all shops. Ventilation in all shops and departments thereof, during working hours, shall be sufficient for normal comfort and protection of the health of all workers.

## Section 11 - Joint Conference

(a) Conferences will be held with representatives of the Union for the purpose of arriving at a more harmonious understanding with respect to the introduction of new equipment, and any necessary training and/or retraining, by seniority, for the affected employees and in respect to starting time of the employees with a view of arriving at a more uniform starting time then now exists.

(b) The Employer agrees to notify the Union at the earliest possible time of any plans to change the existing production methods, machinery and/or organization.

## ARTICLE V - VACATIONS

### Section 1 – Entitlement

(a) Each employee covered by this Agreement shall be entitled to (and must take) vacations as outlined below. The Employer is required to post the vacation schedule for each current calendar year no later than the first (1st) of March each year. Vacation preference shall be offered by bargaining unit seniority, by classification and department.

Hired prior to October 17, 2004:
After one (1) year:        one (1) week vacation of six (6) days pay per week.
After three (3) years:     two (2) weeks vacation of six (6) days pay per week.
After six (6) years:       three (3) weeks vacation of six (6) days pay per week.
After twelve (12) years:   four (4) weeks (*)
After twenty (20) years:   five (5) weeks (*)

(*) It is understood that the vacation pay for the fourth (4th) and fifth (5th) week of vacation shall be on a five (5) day basis.

Hired after October 16, 2004:
After one (1) year:        one (1) week
After five (5) years:      two (2) weeks

After ten (10) years:       three (3) weeks
After fifteen (15) years:   four (4) weeks
After twenty (20) years:    five (5) weeks

## Section 2 - Vacation Pay

(a) Pay for vacations shall be based on twenty-four (24) hours at the employee's day rate and twenty-four (24) hours at the employee's night rate of pay for each week of vacation.

(b) Each employee who requests his pay before going on his vacation shall receive such pay as provided for in this Agreement.

(c) Each employee hired on or after January 1, 1981, shall receive his first three (3) weeks of annual vacation entitlement based on the average number of weekly hours worked during the preceding anniversary year for each week of his vacation entitlement, but in no event shall the vacation pay be less than forty (40) hours nor more than forty-eight (48) hours for each week of entitlement.

## Section 3 - Prorated Vacation Pay Upon Termination

(a) Each employee leaving his employment after one (1) year shall, in addition to one (1) week vacation with pay for the previous year, if not taken by the time of separation, receive one-half (½) day's vacation pay for each month employed during that part of the anniversary year which he worked. The anniversary year is defined as the year starting with the individual's date of employment.

(b) Each employee leaving his employment after three (3) years shall, in addition to two (2) weeks vacation with pay for the previous year, if not taken by the time of separation, receive one (1) day's vacation pay for each month employed during that part of the anniversary year which he worked. The anniversary year is defined as the year starting with the individual's date of employment.

(c) Each employee leaving his employment after six (6) years shall, in addition to three (3) weeks vacation with pay for the previous year, if not taken by the time of separation, receive one and one-half (1½) days vacation pay for each month employed during that part of the anniversary year which he worked. The anniversary year is defined as the year starting with the individual's date of employment.

(d) Each employee leaving his employment after twelve (12) years shall, in addition to four (4) weeks vacation with pay for the previous years as defined, if not taken by the time of separation, receive one and eleven-twelfth (1 & 11/12) days vacation pay for each month employed during that part of the anniversary year which he worked. The anniversary year is defined as the year starting with the individual's date of employment.

(e) Each employee leaving his employment after twenty (20) years shall, in addition to five (5) weeks vacation with pay for the previous years as defined, if not taken by the time of separation, receive two and one-third (2 & 1/3) days vacation pay for each month employed during that part of the anniversary year which he worked. The anniversary year is defined as the year starting with the individual's date of employment.

(f) Each employee hired on or after January 1, 1981, leaving his employment shall receive earned vacation for the previous anniversary year, if not taken by the time of separation. In addition, each employee shall receive pro-rata vacation pay calculated on the basis of one-twelfth (1/12) multiplied by each month employed during that part of the anniversary year which he worked, multiplied by the average number of weekly hours worked during the preceding anniversary year, multiplied by the employee's vacation entitlement as provided in this Article. The anniversary year is defined as the year starting with the individual's date of employment.

## Section 4 - Prorated Vacation Pay/Layoff, Disability and Jobbers

After one (1) year of employment and thereafter, each employee who works a minimum of sixteen hundred forty (1,640) hours, including overtime hours, during his previous anniversary year, shall be qualified and receive the full contractual vacation based on his years of employment. Employees who work less than sixteen hundred forty (1,640) hours, including overtime hours, per anniversary year, shall receive a prorated vacation based on a fraction where the numerator represents the number of hours worked, and the denominator remains a constant sixteen hundred forty (1,640) hours of his entitlement based on years of employment.

## Section 5 - Summer Vacation

(a) For available vacation weeks, employees shall be permitted to select by department (in the case of in-store bakeries by in-store district), classification and seniority, a maximum of two (2) separate weeks or two (2) consecutive weeks of vacation between the period beginning with the week of Memorial Day and concluding with the week of Labor Day.

(b) After the above bidding procedure has been completed and if there are available weeks of vacation remaining between the two (2) holiday weeks, a second (2nd) round of bidding by seniority for those vacation weeks shall commence. Finally, after the vacation schedule has been completed and if there are weeks of vacation which then become available due to retirement or cancellation, said weeks shall be offered by seniority starting with the most senior employee who was unable to get on the vacation schedule for two (2) weeks of vacation between the above named two (2) holidays.

## ARTICLE VI – HOLIDAYS

The following days shall be holidays under this agreement, or the day celebrated by the Federal Government in lieu thereof:

| | | |
|---|---|---|
| New Year's Day | Independence Day | Christmas Day |
| Presidents' Day | Labor Day | |
| Memorial Day | Thanksgiving Day | |

## Section 1 - Personal Holidays

(a) Each employee hired prior to May 10, 1997 shall be entitled to four (4) personal holidays with pay per calendar year effective the second (2nd) January 1st following their date of employment, provided the employee has worked at least one thousand (1,000) hours during

the preceding twelve (12) month period. Effective January 1, 1998 said employee shall be entitled to six (6) personal holidays with pay per calendar year.

(b) Each employee hired between May 10, 1997 and August 9, 2008, shall be entitled to three (3) personal holidays per calendar year effective the second January 1st following their date of employment, provided the employee has worked at least one thousand (1,000) hours during the preceding twelve (12) month period.

Employees hired after August 9, 2008, shall be eligible for Personal Holidays, as follows:
The January 1st, following one (1) year of continuous service – one (1) day
The January 1st, following two (2) years of continuous service – two (2) days
The January 1st, following three (3) years of continuous service – three (3) days

## Section 2 - Bidding for Personal Holidays

(a) Employees may bid their personal holiday entitlements for the upcoming year at the time they place their vacation bids and once the bid has been awarded the employee may not be bumped. Employees who elect not to exercise their personal holiday bids at the time they place their vacation bids may also bid for personal holidays by giving their Supervisor at least ten (10) days advance notice regarding their desired date, except in cases of proven emergency, no notice need be given.

(b) In both instances above, in the event two (2) or more employees select the same date and work in the same classification and department, seniority shall prevail.

(c) The Employer may restrict either the week before or the week of the holiday from personal holiday choice, but not both.

## Section 3 - Work on Holiday

(a) Each employee, hired prior to October 17, 2004, who is required to work on any of the above holidays, shall receive two and one-half (2½) times the regular rate of pay. Employees hired after October 16, 2004, shall receive the premiums outlined below for all hours worked on the named holidays, in addition to pay for a holiday not worked as provided in the contract:

| | |
|---|---|
| Start | $1.00 per hour premium |
| After 2080 hours worked: | $1.50 per hour premium |
| After 4160 hours worked: | $2.00 per hour premium |
| After 6240 hours worked: | $2.50 per hour premium |

Overtime on holidays shall be time and one-half (1½) of the holiday rate of pay for all such time worked.

(b) A doctor's certificate shall be required for the payment of holiday pay at the straight time rate in the case a scheduled employee is prevented from working his scheduled holiday shift due to employee illness or accident.

## Section 4 - Definition of Holiday Work

All hours worked between the hours of 12:01 a.m. and 11:59 p.m. of the holiday shall be considered holiday work, except Christmas, New Year's and scheduled day off.

## Section 5 - Holiday Pay

(a) Each employee who is not required to work on any of the above holidays shall receive pay at straight time, provided he is not on vacation and provided further, he is present for work on his scheduled day before and after such holiday unless his absence is excused (excuses - sickness or death in family).

(b) In the case an employee is absent from work on his scheduled day before and after a holiday or is absent on one (1) of these scheduled days due to employee illness or death in the family, such employee shall be entitled to and receive holiday pay, providing the employee works at least one (1) work day during the holiday week.

## Section 6 - Sunday-Saturday Holidays

All holidays falling on Sunday will be observed on Monday. All holidays falling on Saturday shall be observed on Saturday.

## Section 7 - Christmas Day and New Year's Day

(a) Employees will not be required to work between 1: 00 a.m. and 11:59 p.m. on December 25th except that work may be extended to 4:00 a.m. on December 25th where necessary. Should the Employer elect to operate the bake-offs on New Year's Day, such work opportunities shall first be offered by seniority and job classification and should insufficient volunteers be available, the Employer may schedule employees by inverse seniority order.

(b) If any hardship develops because of the above arrangements, either party may open this section to resolve the problem.

(c) Christmas and New Year's will be celebrated on the actual day, other language notwithstanding.

# ARTICLE VII - SUNDAY WORK - SUNDAY PAY - ASSIGNMENT & DEFINITION

(a) Sunday work shall be offered on the basis of seniority and the ability to perform the work within each classification. In the case that senior employees are not available for Sunday work, the Employer shall assign junior employees in inverse order of seniority. Sunday work shall be defined as: "All hours worked through and continued from the eight (8) hour scheduled shift nearest twelve noon on any Sunday shall be designated as Sunday work".

(b) For employees hired prior to October 17, 2004, the Sunday rate of pay shall be in the amount of time and one-half (1½) the employee's regular rate of pay. Employees hired after October 16, 2004, shall receive the premiums outlined below for all hours worked on Sundays:

| Start | $1.00 per hour premium |
| After 2080 hours worked: | $1.50 per hour premium |
| After 4160 hours worked: | $2.00 per hour premium |
| After 6240 hours worked: | $2.50 per hour premium |
| After 8320 hours worked: | Time and one-half (1½) their straight time hourly rate |

Provided, however, that any such employee who works in excess of forty (40) hours per week (Sunday through Saturday inclusive) shall not be compensated for both Sunday premium and weekly overtime.

(c) Overtime shall be paid at time and one-half (1½) of the Sunday rate of pay for overtime hours worked on a Sunday shift.

## ARTICLE VIII - INTERMISSION REST

(a) An intermission of twelve (12) hours is required between any two (2) days of work except Saturday, when an intermission of eight (8) hours will be required.

(b) Each employee shall have an unbroken rest period of thirty-three (33) hours between his shifts when such intermission includes his scheduled day off. If such time is not allowed, the prevailing rate of overtime shall be paid for any time worked within the aforementioned rest period. The foregoing restriction shall not be applicable in any week in which a holiday occurs.

## ARTICLE IX - SENIORITY

### Section 1 – Layoff

(a) When employees have to be laid-off due to insufficient work or job elimination, the affected employee will have the right to replace the junior employee within his job classification. The then displaced employee shall replace the junior employee within the bargaining unit, thereby resulting in the junior employee in the bargaining unit being laid off. In all instances, the remaining employees must be qualified to perform the work. Each employee with one (1) or more years of employment shall not lose his seniority if recalled within two (2) years immediately following the layoff. Each employee laid off with less than one (1) year of employment shall have recall rights for six (6) months following the layoff. A recall notice shall be given by registered or certified mail.

(b) Each employee who is to be laid off, based upon the provisions contained herein, shall receive a written layoff notice a minimum of one (1) calendar week in advance to the layoff date. In the case that such notice is not given, he shall be paid forty (40) hours of pay at his regular rate of pay, which shall include the night shift differential for night hours normally worked by the employee to be laid off. A discharge for cause or the quitting of an employee shall not be construed to be a layoff.

(c) The Company and Union agree to meet and discuss inequitable situations that may arise in the case of layoff when the contractual rules of seniority and qualification are applied.

## Section 2 - Permanent Shift Vacancies

(a) A permanent shift vacancy may exist in the event of an employee termination, an employee being absent from work for more than thirteen (13) months as a result of a disability or due to increase in business necessitating the creation of a new shift.

(b) Journeyman Bakers

A permanent shift vacancy shall be posted within the department for seventy-two (72) hours excluding Saturday and awarded to the employee within thirty (30) days from the date the shift was vacated, on the basis of bargaining unit wide seniority within the department provided the employee is qualified to do the job. After the initial vacancy has been filled, subsequent vacancies created within the department will be posted for bid and filled by bargaining unit wide seniority within the department, provided the employee is qualified to do the job, the bidding shall continue until such time that the final vacancy is created. The final vacancy shall then be offered for bid to all Journeyman Bakers with prior experience based on bargaining unit wide seniority (excluding in-store) and awarded on seniority providing they can demonstrate within the first three (3) weeks in the new department their ability to perform the work.

(c) Baker's Helper/Utility and Miscellaneous/Utility

A permanent shift vacancy shall be posted for bid for seventy-two (72) hours excluding Saturday and awarded to the employee within thirty (30) days from the date the shift was vacated on the basis of bargaining unit wide seniority within classification and department. The remaining employees in that class in that department shall be moved up by seniority. Employees not wishing to move shall remain in their shift. The final vacancy in the classification and department shall then be offered for bid plant wide and Annex (excluding in-store) based on bargaining unit wide seniority and awarded to Helpers/Utility, Miscellaneous/Utility employees on the basis of their seniority.

## Section 3 - Promotion of Apprentice

Promotions shall be on the basis of seniority subject to the relative ability and qualification of the employee concerned. A notice shall be posted in regards to an apprentice vacancy so that each employee can bid for the job. The bid notice shall remain posted for seventy-two (72) hours excluding Saturday.

## Section 4 - Promotion to and Shift Vacancies for Working Foreman and Lead man/Miscellaneous

Each permanent or Relief vacancy or open shift in the classification of "Working Foreman" and "Lead man/Miscellaneous" shall be posted for bid within the Department for seventy-two (72) hours, and the Employer shall select the most qualified employee from those who submit a bid therefore. Qualifications being equal, however, the senior employee shall be assigned to such job.

## Section 5 - Promotion of Union Members to Supervisors

An employee who is promoted to a supervisory position shall retain his seniority for two (2) years, although he shall not accumulate seniority while outside the bargaining unit.

- 14 -

Unless terminated, such employee may be returned by the Employer to the bargaining unit, and if the reentry is within two (2) years of promotion, he shall return to his former classification but at the least attractive shift.

The above condition is the only circumstance under which an employee may return to the bargaining unit without loss of seniority. Nothing in this Section shall mean that the Employer recognizes the Union as the bargaining agent for any supervisory employees.

## Section 6 - Temporary Transfers

Temporary department transfers of up to one (1) week are to be accomplished by seeking volunteers. Failure to secure volunteers shall result in reassigning the junior employee from his regular department to a work schedule in the new department.

## ARTICLE X - LUNCH PERIOD

A lunch period of thirty (30) minutes, not included in the workday, shall be allowed as near as possible to the middle of the employee's shift, but in no event shall it be started before three (3) hours or after six (6) hours from his starting time. If an employee is required to start his lunch period before the third (3rd) hour, or after the sixth (6th) hour after his starting time, it shall be on Company time.

## ARTICLE XI - REST PERIOD DURING WORKING HOURS

(a) Each employee shall be granted a ten (10) minute rest period as nearly as possible in relation to the completion of his first two (2) hours of work after the beginning of his shift and ten (10) minutes as nearly as possible in relation to the completion of his first two (2) hours of work after the end of his lunch period.

(b) In the event an employee is required to work nine (9) or more hours, he shall be granted an additional ten (10) minute rest period as nearly as possible in relation to the end of his eighth (8th) hour of work.

(c) Should an employee be required to work more than ten (10) hours, he shall be granted an additional ten (10) minute rest period as nearly as possible in relation to the end of his tenth (10th) hour of work.

(d) Should an employee be required to work more than twelve (12) hours, he shall be granted an additional ten (10) minute rest period as nearly as possible in relation to the end of his twelfth (12th) hour of work.

(e) During the period of May 15th to September 15th each year, rest periods for Plant employees shall be increased to fifteen (15) minutes each, including travel time.

## ARTICLE XII – JOBBERS

(a) Each Jobber shall be paid the standard rate of wages. No Jobber shall be engaged for less than a full day at any time. In the event a Jobber is required to work more than an eight (8) hour day, he shall then be paid the overtime rate of pay of time and one-half (1½).

(b) No work shall be provided for a Jobber while a full time employee is on layoff.

(c) Each Jobber who works eighty (80) hours or more during any month shall earn and accrue one (1) day of sick leave.

(d) For each hour or portion thereof for which a Jobber receives pay the Employer shall pay the same hourly contribution rate as required by Article XV up to a maximum of forty (40) hours in any week but in no event shall the contributions for a Jobber who works during any month amount to less than contributions for ninety-six (96) hours.

## ARTICLE XIII - MANAGEMENT FUNCTION

Except as otherwise provided by specific provisions of this Agreement, the management and direction of the business, the operation, and the working forces is vested exclusively in the Employer.

## ARTICLE XIV - PENSION

It is hereby agreed to provide pension and retirement benefits as follows:

(a) The Employer hereby agrees to be bound as a party by all the terms and provisions of the Agreement and Declaration of Trust dated September 11, 1955, as amended, establishing the Bakery and Confectionary Union and Industry International Pension Fund (hereafter called the Fund) and said agreement is made a part hereof by reference.

(b) The Employer agrees to make payments to the Bakery and Confectionery Union and Industry International Pension Fund for each employee working in job classifications covered by the said Collective Bargaining Agreement as follows:

For each hour or portion thereof for which an employee subject to the Collective Bargaining Agreement receives pay, the Employer shall make a contribution of three dollars and forty-five ($3.45) to the above-named Pension fund, up to a maximum of forty (40) hours in any week.

For the purpose of this Article, it is understood that contributions shall be payable on behalf of the employees from the first (1st) day of employment, whether said employees are permanent, temporary or seasonal or full-time or part-time and regardless of whether or not they are members of the Union. The term "employee" does not include a self-employed person, corporate officer, owner or partner.

(c) It is agreed that the Pension Plan adopted by the Trustees of the said Pension Fund shall be such as will qualify for approval by the Internal Revenue Service of the United States Treasury Department, so as to enable the Employer to treat contributions to the Pension Fund as a deduction for income tax purposes.

(d) Contributions provided for herein shall be paid monthly and shall be accompanied by a completed remittance report. Both payment and report are due on the tenth (10th) day of the month following the month covered by the report. In the event the Employer fails promptly to pay amounts owed, the Employer shall pay such collection costs, including court costs and reasonable attorney's fees, as the Pension Fund shall incur and shall pay interest at such rate as the Trustees shall fix from time to time.

(e) The payments so made to the Fund shall be used by it to provide retirement benefits for eligible employees in accordance with the Pension Plan of said Fund, as determined by the Trustees of said Fund, to be applied to the eligible employees based on the amount of Employer contributions.

(f) This clause encompasses the sole and total agreement between the Employer and the Union with respect to pensions and retirement.

(g) This clause is subject in all respects to the provisions of the Labor-Management Relations Act of 1947, as amended, and to any other applicable laws.

## ARTICLE XV - HEALTH BENEFITS FUND

It is hereby agreed to provide insurance or health benefits as follows:

(a) The Employer hereby agrees to be bound as a party by all the terms and provisions of the Agreement and Declaration of Trust dated August 7, 2002, as amended, establishing the Bakers Union and FELRA Health Benefits Fund (hereinafter called the Fund) and said Agreement is made part hereof by reference.

(b) The Employer agrees to make payments to the said Fund for each employee working in job classification covered by the said Collective Bargaining Agreement as follows:

The Employer agrees to pay the necessary maintenance cost up to the full amount as then notified by the Board of Trustees of said Fund in order for the Employer to continue to provide the existing health benefits plan (as established in the contract negotiations of August 2008) to the employees, at no cost to the employees, up to a maximum of forty (40) hours in any week, conditioned by the provisions set out in paragraph (h).

Plan I:     For employees hired before October 16, 2004
Plan II:    For those employees hired on or after October 16, 2004 (*)

(*) Employees under Plan II, after seventy-two (72) months of employment will "snap-back" from Plan II to Plan I.

Contributions shall be payable from the first (1st) day of employment, whether said employees are permanent, temporary or seasonal or full-time or part-time employees and regardless of whether or not they are members of the Union. The term "employee" does not include a self-employed person, corporate officer, owner or partner.

(c) The payments made in accordance with (b) above, shall be allocated as follows:

To provide health benefits effective August 8, 2008 for eligible employees and their eligible dependents (if any), in accordance with Plan I and Plan II of said Fund.

(d) If at any time during the term of this Agreement, or any renewal or amendment thereof, there should be enacted any Federal or State laws or regulations requiring the Employer to secure, provide or pay for insurance or health benefits or coverage not provided for in said Plan, either party hereto may, upon thirty (30) days notice to the other, reopen this Agreement solely for the limited purposes of making such adjustments as may be appropriate in the light of said new laws or regulations.

(e) Contributions provided for herein shall be paid monthly and shall be accompanied by a completed remittance report. Both payment and report are due on the 10th day of the month following the month covered by the report. In the event the Employer fails promptly to pay amounts owed, the Employer shall pay such collection costs, including court cost and reasonable attorney's fees as the Fund shall incur and shall pay interest at such rate as the Trustees shall fix from time to time.

(f) This Article encompasses the sole and complete Agreement between the Employer and the Union with respect to insurance or health benefits or coverage.

(g) This Article is subject in all respects to the provisions of the Labor Management Relations Act of 1947, as amended, and to any other applicable laws.

(h) In the case that the Employer determines that the existing benefit plan can be provided to the employees at a lower cost to the Employer on a self-insured basis without any reduction in benefits and at no cost to the employees, in such event, this Local Union must receive the guarantees from the Employer including a copy of the Agreement between the Employer and the Bakers Union and FELRA Health Benefits Fund.

(i) The parties agree that employees hired on or after April 2, 2009, shall be obligated to pay the following weekly co-premium under the terms of the applicable plan, effective with the month in which coverage by the Bakers Union and FELRA Health and Welfare Benefits Fund starts, and will continue every month in which they are eligible for benefits.

$5.00 – Individual      $10.00 – Individual + 1      $15.00 – Family

Employees choosing not to pay the premium co-pay of $5.00/$10.00/$15.00 per week for health & welfare will not be entitled to benefits. If an employee chooses not to opt for benefit coverage, they may not reapply for coverage until the open enrollment period for the next calendar year.

# ARTICLE XVI - SICK LEAVE

Sick leave shall be provided as follows:

(a) Accrual shall start from the first (1st) day of employment with benefits paid for disabilities occurring after ninety (90) days of continuous service.

(b) The Employer will pay each full-time employee (and each qualified Jobber as established in Article XII Paragraph C) sick leave based on accrual of one (1) days sick leave [100% of gross pay for eight (8) straight time hours] for each month of service, up to one hundred thirty (130) days.

(c) Each employee who is absent from work in excess of three (3) days due to accident, illness or disability, shall receive sick leave payments effective with his first (1st) day of absence. Employees who are absent from work three (3) days or less shall receive sick leave payments effective with his second (2nd) day of absence.

(d) In order to receive sick leave payments, an employee must be absent from work because of a disability caused by sickness or non-compensable accident. Such disability must be affirmed by acceptable medical statement in the case the absence from work exceeds one (1) working day. This provision applies to this Article only. Acceptable medical statement shall be defined as a physician's statement on a Company form. Such form shall confine itself to the period of absence, cause of current illness (diagnosis), signed by a physician including printed or typed name and address of physician. It will also specify the particular conditions of medical release. In addition, the forms necessary to request sick leave shall be available at each location where a bargaining unit employee is assigned.

(e) In case of compensable accident where the employee is drawing compensation as provided by the Workers Compensation Act, the employee shall have the right to draw on his accumulated sick leave credits so as to make up the difference between such Workers Compensation and forty (40) hours straight time pay per week.

(f) Where the employee is eligible for "Accident or Sickness" benefit under the Bakers Union and FELRA Health Benefits Fund Plan, the employee shall have the right to draw upon his accumulated sick leave credits so as to make up the difference between the benefits mentioned herein and forty (40) hours straight time pay per week.

(g) Leave with pay as aforesaid shall be granted to the extent that sick leave credit has been accumulated. The amount of leave so granted shall be charged against the balance of the credit available at the time of the illness, thereby reducing the balance.

(h) Employees must notify the Employer of such illness as early as possible but not later than one (1) hour before the beginning of shift on the first (1st) day of absence, unless illness is of such nature that employee is rendered incapable of compliance with this requirement.

(i) Sick leave benefits will not be paid to employees while on vacation. There shall be no duplication of payments for the same day.

(j) Employment must be continuous to entitle employee to sick leave benefits.

(k) The Employer shall post April 1st each year a list containing the names of all employees and each employee's total number of sick leave hours accumulated.

(l) Effective December 1st, any employee may request and shall receive pay for any portion up to one hundred percent (100%) of all accrued and unused sick leave accrued as of the previous December or in the case of a new hire, hiring date.

(m) There shall be a final sick leave pay-out in the amount of one hundred percent (100%) of all accrued and unused sick leave accrued by the employee at the time of Plant closing and/or in the case of death of the employee.

Employees with twenty (20) or more years of service with the Employer shall be entitled to a payout of accrued but unused sick leave [up to a cap of seventy-five (75) days] upon their retirement.

## ARTICLE XVII - LEAVE OF ABSENCE WITHOUT PAY

Each employee with three (3) or more months of continuous employment shall be granted leaves of absence, which shall not interrupt his service record, subject to the following conditions:

(a) In case of an employee's absence from work in excess of six (6) consecutive calendar months due to a proven medical disability, or in the case a disabled employee has exhausted his total earned and accrued sick leave entitlement, whichever comes later, the Employer shall grant a leave of absence. Each disabled employee shall apply for a leave of absence on a form supplied by the Employer. Such application shall be filed during the seventh (7th) but before the end of the eighth (8th) month of the employee's absence due to disability or during the first (1st) month immediately following the month for which the disabled employee did not receive any sick leave payments, whichever comes later. The Employer shall grant a leave of absence, effective with the date application is made, for duration of one (1) month leave for each month of continuous employment, up to a maximum of one (1) year's leave for employees with one (1) year or more of continuous employment.

(b) An employee who is absent from work due to any disability connected with or covered by the Workmen's Compensation Act shall not be required to apply for a Leave of Absence. Such employee, when recovered, shall return to work with no loss of seniority providing he returns within two (2) years from the onset of his disability.

(c) The Employer is not required to grant Leaves of Absence to employees based on conditions other than those described in this Section except as the Employer is granting leaves under the Family Medical Leave Act.

(d) Medical disability (for the purpose of this Section) defined: Any disability, excluding disabilities covered by the Workmen's Compensation Act, caused by or as a direct result of illness, accident or pregnancy.

## ARTICLE XVIII - GRIEVANCE AND ARBITRATION PROCEDURE

### Section 1 - Discharge and Discipline

No Employee shall be discharged or otherwise disciplined except for just cause. The Shop Steward will be notified of any disciplinary actions taken.

### Section 2 - Grievance Procedure:

(a) Plant

Should any grievance or dispute arise concerning the interpretation or application of this Agreement, it shall be handled in the following manner:

(1) Within ten (10) days following any alleged violation of the Agreement, or ten (10) days from the date the grievant first has knowledge thereof, the aggrieved party shall present his grievance to the Shop Steward and both the aggrieved and the Shop Steward shall present the grievance to the immediate Supervisor of the aggrieved party.

(2) If the Shop Steward and the grievant are unable to resolve such grievance with the Supervisor within seven (7) working days, the Business Representative of the Local Union shall reduce the grievance to writing and present it to the Plant Manager.

(3) The written grievance shall be reviewed by the Plant Manager and the Business Representative of the Union and they shall make every possible effort to resolve same. If such parties are unable to resolve the grievance within twenty-one (21) days following the date it was presented to them, it shall thereupon be referred to the board of arbitration referred to below.

(b) In-Store Operations

Should any grievance or dispute arise concerning the interpretation or application of this Agreement, it shall be handled in the following manner:

(1) Within ten (10) days following any alleged violation of the Agreement or ten (10) days from the date the grievant first having knowledge thereof, the aggrieved party shall present his grievance to the Local Union and the Union representative, together with the grievant, shall present the grievance to the designated Employer representative of the aggrieved party.

(2) If such parties are unable to resolve the grievance with the Employer representative within seven (7) working days, the business representative of the Local Union shall reduce the grievance to writing and present it to the Employer's Labor Relations Department with a copy to the District Manager of the grievant.

(3) The written grievance shall be reviewed by the Employer representative and the Union's business representative and they shall make every possible effort to resolve same. If such parties are unable to resolve the grievance within twenty-one (21) days following the date it was presented to them, it shall thereupon be referred to arbitration as documented below.

### Section 3 - Arbitration Procedure

(a) Within the twenty-one (21) day period referred to above, the grieving party shall notify the Federal Mediation and Conciliation Service of the need to designate an arbitrator in accordance with the rules and regulations of the Agency.

(b) The Arbitrator shall consider each case solely on its merits and this Agreement shall constitute the basis upon which the decision shall be rendered. The Arbitrator shall have no power to alter, amend, revoke, or suspend any of the provisions of this Agreement.

(c) The decision of the Arbitrator shall be binding upon both parties for the duration of the Agreement.

(d) Should any party fail, upon written notice, to appear before the Arbitrator in any matter submitted for arbitration as herein provided, the Arbitrator may proceed with the hearing and render his decision upon the testimony and evidence presented, which decision shall be binding and shall have the same force and effect as if both parties were present.

(e) The Arbitrator's decision shall be based only on evidence presented to him in the presence of both parties or otherwise made available to both parties.

(f) The Employer shall have access to the grievance and arbitration procedures where necessary.

(g) It is expressly understood and agreed that no employee shall have the right to compel arbitration without the written consent of the Union.

## ARTICLE XIX - STRIKE AND LOCKOUT

(a) There shall be no strike, interruption of work, boycott or temporary walkout on the part of the Union or the employees, and no lockout on the part of the Employer during the term of this Agreement, except for:

(1) Refusal to comply with the arbitration machinery set forth herein, or

(2) Refusal to comply with the decision of the Board of Arbitration.

(b) However, it is understood that the Union shall not be liable in any manner whatsoever for fulfillment of its obligation to the Bakery, Confectionery, Tobacco Workers and Grain Millers International Union or the Greater Washington Central Labor Council, AFL-CIO, that obligation being that members of the Union may refuse to cross a lawful picket line. No employee shall be disciplined or discharged for refusal to cross a lawful picket line. The Union will give the Employer forty-eight (48) hours written notice before observing a lawful picket line.

(c) In the event picketing or any other economic activity by the Union or other Union or individual occurs at the Employer's premises, the Union hereby agrees that it will instruct its members to move, finish up, transport and otherwise handle all perishable commodities for a period of seventy-two (72) hours after such picketing or economic activity commences. The

Union further agrees that during this seventy-two (72) hour period, it and its members will not interfere with the movement, transport or handling of perishable commodities which are to be moved, transported or handled by its members or by employees who are members of other labor organizations.

## ARTICLE XX - SEVERANCE PAY

### Section 1

It is agreed that each employee who is displaced from his employment by reason of the closing of an entire plant, a department thereof or by introduction of labor saving equipment, shall be compensated for such displacement, provided he has been actively employed by the Employer for a period of at least three (3) years. An eligible employee's compensation for his displacement shall be on the basis of thirty (30) hours of severance pay (at his straight time hourly rate of pay) for each full year, or major portion of a year, of his actual employment, commencing with the fourth (4th) year thereof. Payment under this formula shall be limited to a maximum of twenty-two and one-half (22½) weeks [i.e., maximum of nine hundred (900) hours of severance pay].

### Section 2

The above-described severance pay will not be paid to:

(a) Any employee who is offered and accepts employment with the Employer at the same location.

(b) Any employee who accepts a job with the Employer at any location providing the job is covered by the jurisdiction of Bakery, Confectionery, Tobacco Workers and Grain Millers International Union Local 118, so that the employee can continue to earn pension credits.

(c) Any employee who voluntarily quits or is discharged for cause before he is separated from employment by the Employer.

(d) An employee accepting severance pay shall forfeit and cease to have any seniority and recall rights as provided for in this Agreement.

(e) Any employee re-employed after receiving severance pay shall be considered a new employee from the date of re-employment.

### Section 3

(a) In the event an eligible employee wishes to remain on the plant seniority list, for the purpose of possible recall, he may elect to defer acceptance of his severance pay for a period of twelve (12) months. At any time during such period of twelve (12) months, however, he may request his severance pay and his right of recall and seniority shall terminate as of that date.

(b) If such employee has not been recalled by the end of such period, he shall be mailed his severance pay and his right of recall and seniority shall terminate as of that date.

## ARTICLE XXI - GENERAL PROVISIONS

### Section 1 – Contributions

No employee hired prior to April 2, 2009, shall be required to subscribe to or contribute any money toward any fund in his place of employment, which has not been endorsed by the Union or provided for by law. The parties further agree that this provision does not apply to employees hired on or after April 2, 2009 who are required to pay co-contributions in order to receive health and welfare benefits.

### Section 2 - Sole Agreement

This Agreement and its attachments constitute the entire Agreement between the parties and supercedes all previous written and oral understandings.

### Section 3 - Funeral Leave

(a) In the case of death of a brother, sister, grandparent and/or parent-in-law of any employee, the Employer shall grant to the employee a leave of absence consisting of three (3) consecutive working days with pay or in the case of death of an employee's grandchild, such employee shall be entitled to one (1) working day with pay. Such funeral leave shall be scheduled within seven (7) days following the date of death. The three (3) working days of paid funeral leave or any portion thereof may not be provided in the case that any of these three (3) days or all of them within the seven (7) day period, fall during previous scheduled vacation, during periods of illness and during other previous scheduled absence from work.

(b) In the case of death of mother or step mother, but not both and father or stepfather, but not both, spouse or child, each employee is guaranteed a bereavement leave consisting of five (5) working days with pay.

### Section 4 - Jury Duty

The Employer agrees to pay the difference for time, which an employee is required to lose on account of service on a jury. This difference will be computed at the employee's straight time hourly pay at a maximum of eight (8) hours per day or days involved less his compensation for being required to serve on such jury.

### Section 5 – Uniforms & Union Label

(a) The Employer agrees to furnish to each employee covered by this Agreement pants, aprons and hats.

(b) The label of the International Union shall be placed on all products weighing one-half (½) pound or more.

### Section 7 - Shop Steward Education

One time each calendar year, the Employer shall provide on request by the Union, one (1) eight (8) hour paid day at the straight time rate for a Shop Steward from the in-store to attend a Union

Education Conference.   The Employer will be notified two (2) weeks in advance of the Conference.

Section 8 - Technology Changes

(a) The Employer agrees to notify the Union at the earliest possible time of any plans to make substantial changes in existing production processes, machinery or work methods.

(b) The Employer further agrees to provide reasonable and appropriate training and refresher training necessary for the employees to perform bargaining unit work on new equipment, including any newly created unit jobs, or to perform other work to which employees might be reassigned or transferred. The Employer further agrees to discuss with the Union the design and delivery of training programs, and agrees to consider the seniority standing within classifications in the selection of employees for training, retraining and job assignments necessary due to new technology.

## ARTICLE XXII - DURATION OF AGREEMENT

This Agreement shall be in full force and effect from August 10, 2008, to and including August 11, 2012, and thereafter until a new Agreement has been consummated and signed; or this Agreement, after the above expiration date, has upon notice been canceled or terminated by the Employer or by Bakers' Local Union No. 118.

FOR THE EMPLOYER:

Eric D. Weiss
Vice President of Labor Relations

FOR THE UNION:

Allen R. Haight
President

# SCHEDULE "A"

## Section I - Classification and Hourly Rates

(a) The following general wage increases shall be paid only to employees who are at or above the top of the scale as of the effective date of the increase. These wage increases shall apply to the employee only. The top of the scale progression rates will remain unchanged, and these wage increases shall not be applied, proportionally or otherwise, to any step in the wage progressions for these classifications:

| 08/10/08 | 08/09/09 | 08/08/10 | 08/07/11 |
|----------|----------|----------|----------|
| 40¢ | 35¢ | 35¢ | 40¢ |

| CLASSIFICATION | |
|----------------|--------|
| Working Foreman | $20.96 |
| Journeyman Baker | $20.10 |
| Lead man/Miscellaneous | $20.10 |
| Bakers Helper (prior to 05/09/82) | $19.46 |
| Miscellaneous Worker (prior to 05/09/82) | $19.46 |
| Bakery Utility Worker (between 05/09/82 & 06/29/94) | $19.46 |
| Bakery Utility Worker (after 06/29/94) | $16.63 |

| Apprentice: | |
|-------------|--------|
| First (1st) six (6) months | $19.05 |
| Second (2nd) six (6) months | $19.11 |
| Second (2nd) year | $19.49 |
| Third (3rd) year | $19.56 |

## Section 2A - Starting Rates

For employees hired June 29, 1994 and before:

(a) Each new employee, except a Journeyman Baker or Apprentice, may be paid twenty percent (20%) per hour less than the full rate for the respective classification during the first (1st) year of employment.

(b) Each new employee, except a Journeyman Baker or Apprentice, may be paid fifteen percent (15%) per hour less than the full rate for the respective classification during the second (2nd) year of employment.

(c) Each new employee, except a Journeyman Baker or Apprentice, may be paid ten percent (10%) per hour less than the full rate for the respective classification during the third (3rd) year of employment.

(d) The full hourly rate of pay for the respective classification shall be paid to each employee effective with the first (1st) day following the completion of three (3) years of employment.

<u>Section 2B - Starting Rates</u>

For Utility Workers hired after June 29, 1994:

First (1st) year - Seventy-five (75%) of the classification hourly rate
Second (2nd) year - Eighty percent (80%) of the classification hourly rate
Third (3rd) year - Eighty-five percent (85%) of the classification hourly rate
Fourth (4th) year - Ninety percent (90%) of the classification hourly rate
Fifth (5th) year - Ninety-five percent (95%) of the classification hourly rate
Thereafter to the full classification rate.

<u>Section 3 - Night Shift Differential</u>

(a) Each employee shall be paid, in addition to his regular rate of pay, a night shift differential in the amount of thirty cents (30¢) per hour for each hour he works during the period between 4:00 p.m. and 8:00 a.m. The night shift differential shall be included in the calculation of all Sunday, holiday and overtime pay.

## SCHEDULE "B"

It is specifically agreed and understood that the following terms and conditions of the "Agreement" shall only apply to employees of the Bake-off operations of Giant Food LLC, Retail Stores.

## Section 1 - Bake-off Manager

Where there are more than two (2) Journeyman Bakers employed in any Bake-off location, there shall also be a Bake-off Manager.

## Section 2 - In-Store Journeyman Bakers

(a) Journeyman Bakers employed as of June 29, 1994, shall not be laid-off or reduced as a result of the change in the job responsibilities of bake-off assistants, or the introduction of the Bake-off Baker.

(b) The total number of Bake-Off Managers, Journeymen, Apprentices and Bake-off Bakers assigned to the In-Store Bake Off operation shall not be less than one (1) for every two (2) In-Store Bake Off locations.

## Section 3 – Wages

The following general wage increases shall be paid only to employees who are at or above the top of the scale as of the effective date of the increase. These wage increases shall apply to the employee only. The top of the scale progression rates will remain unchanged, and these wage increases shall not be applied, proportionally or otherwise, to any step in the wage progressions for these classifications:

| 08/10/08 | 08/09/09 | 08/08/10 | 08/07/11 |
|---|---|---|---|
| 40¢ | 35¢ | 35¢ | 40¢ |

CLASSIFICATION
Bake-Off Manager $20.36
Journeyman Baker $19.12

Apprentice:
First (1st) six (6) months $17.22
Second (2nd) six (6) months $17.28
Second (2nd) year $17.66
Third (3rd) year $17.73

## Section 4 - Swing Employees

Only volunteers, newly hired employees or the most recently hired employees who are qualified shall be assigned to perform swing work. The work schedule for each employee shall be posted in their home store by 1:00 p.m. each Friday and shall list the store assignment and shift.

## Section 5 - Posting of Schedule

The work schedule shall be posted by 1:00 p.m. each Friday for the following workweek.

## Section 6 - Night Differential

Each employee shall be paid, in addition to his regular rate of pay, a night shift differential in the amount of thirty cents (30¢) per hour for each hour he works during the period between 4:00 p.m. and 8:00 a.m. The night shift differential shall be included in the calculation of all Sunday, holiday and overtime pay.

Jun 23 2010 4:34PM     BCTGM Local 118          301-731-3996          page 32



# GIANT FOOD, LLC

8301 PROFESSIONAL PLACE, SUITE 115
LANDOVER, MD 20785
PHONE (301) 341-4798
FAX (301) 618-4964

**ERIC D. WEISS**
VICE PRESIDENT
LABOR RELATIONS

August 10, 2008

Mr. Allen R. Haight
President
Bakers Local Union No. 118
2706 Bladensburg Road, NE
Washington, DC 20018

Re:    Traveling Foreman

Dear Mr. Haight:

The purpose of this letter is to memorialize the understanding reached in January 2007 in regards to the above referenced subject.

In the event the Employer promotes an employee from within the Journeyman Baker Contract (i.e. Plant Contract) into the position of a Traveling Foreman, they will be paid a rate of pay equal to that of a Bake-Off Manager ($20.36), and they shall remain covered under the Journeyman Baker Contract.

It is expressly understood that this Agreement shall in no way constitute a requirement or obligation by the Employer to utilize the Traveling Foreman position, and nothing herein shall prevent the Employer from eliminating this position in the future.

Sincerely,

Eric D. Weiss
Vice President of Labor Relations

FOR THE UNION:

Bakers Local Union No. 118

Date: March 18, 2010

- 30 -



# GIANT FOOD, LLC

**ERIC D. WEISS**
VICE PRESIDENT
LABOR RELATIONS

8301 PROFESSIONAL PLACE, SUITE 115
LANDOVER, MD 20785
PHONE (301) 341-4798
FAX (301) 618-4964

August 10, 2008

Mr. Allen R. Haight
President
Bakers Local Union No. 118
2706 Bladensburg Road, NE
Washington, DC 20018

Re:    Flexibility of Job Functions

Dear Mr. Haight:

The purpose of this letter is to memorialize the understanding reached during bargaining in October 2004 in regards to the above referenced subject.

It is understood that all bargaining unit employees agree to acknowledge and assist customers if clerks are otherwise not available. However, bargaining unit employees will not be scheduled to replace clerks who are absent, nor will they be scheduled to perform clerk work.

Sincerely,

Eric D. Weiss
Vice President of Labor Relations

FOR THE UNION:

Bakers Local Union No. 118

Date:

100% RECYCLED



# GIANT FOOD, LLC

**ERIC D. WEISS**
VICE PRESIDENT
LABOR RELATIONS

8301 PROFESSIONAL PLACE, SUITE 115
LANDOVER, MD 20785
PHONE (301) 341-4798
FAX (301) 618-4964

August 10, 2008

Mr. Allen R. Haight
President
Bakers Local Union No. 118
2706 Bladensburg Road, NE
Washington, DC 20018

Re:    H&W Reserve Drawdown

Dear Mr. Haight:

This letter is to confirm our understanding that the parties will adjust contributions to bring the reserves to, but not below, a three (3) month reserve floor within the first twelve (12) months of the new contract.

Sincerely,

Eric D. Weiss
Vice President of Labor Relations

FOR THE UNION:

Bakers Local Union No. 118

Date: March 18, 2010



# GIANT FOOD, LLC

**ERIC D. WEISS**
VICE PRESIDENT
LABOR RELATIONS

8301 PROFESSIONAL PLACE, SUITE 115
LANDOVER, MD 20785
PHONE (301) 341-4798
FAX (301) 618-4964

August 10, 2008

Mr. Allen R. Haight
President
Bakers Local Union No. 118
2706 Bladensburg Road, NE
Washington, DC 20018

Re:    Employees between Stores

Dear Mr. Haight:

   This letter is to confirm our understanding that employees may be used between stores in the same day, but shall be paid for all hours in the service of the Company.

Sincerely,

Eric D. Weiss
Vice President of Labor Relations

FOR THE UNION:

Bakers Local Union No. 118

Date: March 18, 2010

100% RECYCLED



# GIANT FOOD, LLC

**ERIC D. WEISS**
VICE PRESIDENT
LABOR RELATIONS

8301 PROFESSIONAL PLACE, SUITE 115
LANDOVER, MD 20785
PHONE (301) 341-4798
FAX (301) 618-4984

August 10, 2008

Mr. Allen R. Haight
President
Bakers Local Union No. 118
2706 Bladensburg Road, NE
Washington, DC 20018

Re: Supervisor's Area for Seniority Applications

Dear Mr. Haight,

This letter is to confirm our understanding that with respect to the application of seniority for the purposes of transfers, vacation bidding, and personal holiday bidding, the Supervisor's Area shall govern.

Sincerely,

Eric D. Weiss
Vice President of Labor Relations

FOR THE UNION:

Bakers Local Union No. 118

Date:

- 34 -

100% RECYCLED